554 A.2d 39

AMERICAN FEDERATION OF STATE, COUNTY AND MU-
NICIPAL EMPLOYEES, COUNCIL 13, AFL–CIO, et al., and
Joint Bargaining Committee of the Pennsylvania Social Ser-
vices Union and the Pennsylvania Employment Security Em-
ployees' Association Locals 668 and 675, SEIU, AFL–CIO, et
al., and Dennis J. Solecki and Lea F. Barbush, et al., Appel-
lants,

v.

COMMONWEALTH of Pennsylvania, et al., Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 25, 1988.

Decided Feb. 6, 1989.

Nicholas Joseph Marcucci, Harrisburg, for appellant in No. 55.

Stuart W. Davidson, Philadelphia, for appellant in No. 60.

Stuart W. Davidson, Philadelphia, for appellee in No. 55.

Nicholas Joseph Marcucci, Harrisburg, for appellee in No. 60.

Anthony Busillo, Harrisburg, for intervenor F.O.P.

Bruce M. Ludwig, Philadelphia, for appellee in No. 56.

Nicholas Joseph Marcucci, Harrisburg, for appellee in No. 61.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

### ·OPINION OF THE COURT

PAPADAKOS, Justice.

This appeal involves the American Federation of State, County and Municipal Employees, Council 13, AFL–CIO, the Joint Bargaining Committee of the Pennsylvania Social Services Union, and the Pennsylvania Employment Security Employees' Association, Locals 668 and 675 (Appellants) against the State Employees' Retirement Board (Board) challenging the propriety of an order issued by the Commonwealth Court which directed that various members of

the State Employees' Retirement System's (System) pension contributions remain at 5% of their salary.

Appellants are the major unions who represent most Commonwealth and school employees who are entitled to retirement benefits on account of their services to the Commonwealth and its instrumentalities. Until July 21, 1983, all members of the system were required to contribute 5% of their salary to the System. Thereafter, Section 7 of Act 31 of 1983 became effective, 71 Pa.C.S. § 5505.1 (Act 31), requiring all members of the system to contribute an *additional* 1¼% of their salary to the System as member retirement contributions.

The Legislature's attempt to extract an additional 1¼% from active members' salaries who were members of the system on July 21, 1983, generated a declaratory judgment action before the Commonwealth Court. That Court ruled that Section 7 of Act 31 of 1983 was an unconstitutional impairment of the right to contract for both vested and non-vested members, and enjoined the Commonwealth from collecting pension contributions from employees who were active members of the System prior to July 22, 1983 in excess of the 5% basic contribution rate. *AFSCME v. Commonwealth*, 80 Pa.Commonwealth Ct. 611, 472 A.2d 746 (1984).

A direct appeal followed to this Court and, following arguments, we affirmed the order of the Commonwealth Court agreeing that the retirement benefits were a matter of contract rights which could not be changed once fixed and that these rights applied to vested and non-vested members alike as a matter of constitutional law. *Association of Pennsylvania State College and University Faculties v. State System of Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984).

The Board, in its attempt to implement the Commonwealth Court's order, has ceased to collect the additional 1¼% contribution from all employees who were active members of the System and who were making membership contributions to the System on July 21, 1983. The Board

contemporaneously issued a management directive ordering that the 6¼% rate be collected from all other employees who were members of the System before July 22, 1983, but who were separated from their employment for any reason for more than 14 days and who were later reinstated or reemployed.

Dissatisfied with this practice, Appellants filed an enforcement motion with the Commonwealth Court in its original jurisdiction, arguing that the Board was improperly applying the higher contribution rate to the following System members:

1. Employees who have been suspended, terminated or discharged from employment and have subsequently been returned to employment because of an arbitration award, civil service order, court order, law suit, or settlement of a claim for reinstatement;

2. Employees who have been separated from their employment (i.e., furloughed) and subsequently returned to work pursuant to statutory or contractual provisions such as recall rights;

3. Employees who have been on extended authorized leaves of absence with or without pay;

4. Employees who have been separated from employment either voluntarily or involuntarily and who subsequently returned in a manner or method reinstating their accrued seniority rights including credit for prior service; and

5. Employees who have been separated either voluntarily or involuntarily from their employment and who have subsequently returned to active pay status but who maintained their member's status throughout the separation period.

The Board defended its management directive as a logical interpretation of the Commonwealth Court's order which it read as protecting only those members of the System who were actively *employed* on July 21, 1983. The Commonwealth Court disagreed with the Board's interpretation of the order concluding that it applied to *all* employees who

were members of the *System* prior to the enactment of Act 31 and who, in spite of a break in service, maintained their membership in the System by leaving their accumulated contributions in the retirement fund. *AFSCME, AFL–CIO v. Commonwealth*, 111 Pa.Commonwealth Ct. 81, 533 A.2d 785 (1987).

Pursuant to this interpretation, the Commonwealth Court granted all of Appellants' requests except as regards to those individuals who terminated their status as members of the System by removing their accumulated contributions from the retirement fund.

The Board has filed a direct appeal to us from this order and the Appellants have filed a cross-appeal on behalf of those individuals who withdrew their contributions. We now affirm.

The fundamental issue presented to us in this appeal has been made to seem very difficult, but, in reality, is quite simple. The Board believes that continuous employment with the Commonwealth is the condition by which statutorily conferred retirement benefits are fixed. The Board argues that employment is such a pre-requisite pointing to the Commonwealth Court's original order which specifically directed that *employees* who were members of the System were to continue paying the 5% retirement contribution rate. The Board reasons that all other individuals by implication are subject to the new contribution rate. The fallacy with this argument is that the original case only involved actively employed individuals. Therefore, it was not at all unusual for the Commonwealth Court order to enjoin only the collection of the new contribution rate from current employee members of the System.

In clarifying the applicability of its original order, the Commonwealth Court properly looked to the Retirement Code to answer the Board's underlying misinterpretations of the prior order. All retirement rights, including the basic compensation rate, are fixed by the Retirement Code and here lies the heart of this case. The Code defines the

term "member" to include "active member, inactive member, annuitant or vestee." 71 Pa.C.S. § 5102.

Each group is specifically defined as follows:

"Active member." A State employee, or a member on leave without pay, for whom pickup contributions are being made to the fund.

"Inactive member." A member for whom no pickup contributions are being made but who has accumulated deductions standing to his credit in the fund and who is not eligible to become or has not elected to become a vestee or has not filed an application for an annuity.

"Annuitant." Any member on or after the effective date of retirement until his annuity is terminated.

"Vestee." A member with ten or more eligibility points who has terminated State service and has elected to leave his total accumulated deductions in the fund and to defer receipt of an annuity.

The Code also provides that in no case shall any *member's* retirement contribution rate be greater than 5% so long as he does not elect additional coverage or membership in another class of service. 71 Pa.C.S. § 5102.

As can readily be seen, *all members* of the System up until July 21, 1983, were statutorily guaranteed that no more than 5% of their salary would ever be deducted as their basic contribution rate for as long as they maintained their status as a *member* in the same class of service. Continuous employment is nowhere referred to as a pre-requisite for membership in the class or system and, in reality, is but one possibility. A member can also be one who belongs to a service class, (Class A) for example, and who maintains his membership by being an annuitant, vestee or by keeping his contributions in the System. In all of these cases, membership is maintained even though the member is not working for the State. If that member returns to active service in the same service class (Class A), his contribution rate has been fixed at 5% and stays at that rate because he never changed his status as a member or his class of service.

The State obviously elected to offer retirement benefits to members in the broadest possible terms and has specifically contracted with the members of the System to take no more than 5% in retirement contributions from these members for as long as they remain members of the System. Such a guarantee protects members from the myriad occurrences of life which can disrupt continuous service with the State including furloughs, voluntary and involuntary quits, and civil service reinstatements.

Additionally, where a member of the System terminates service with the State for any reason, he *must* make one of the following choices: 1) withdraw *all* of his contributions, thereby discontinuing his status as a member; 2) choose to vest if he has 10 retirement points; 3) choose to receive an annuity if he has over 3 retirement points, but less than 10 retirement points; or 4) keep his contributions in the System by doing nothing. (71 Pa.C.S. § 5907).

In all of the above options, except the first, membership status in the System is maintained since these individuals chose to keep their money in the State System with the assumption that, in return for so investing their funds, all the rights assured to those members by the Code will remain *unchanged* in the event that service on an active basis in the same service class is reestablished. On the other hand, the employees who upon severance chose to withdraw their contributions have clearly terminated their membership status and cannot expect to maintain any rights upon return to the System, except to buy back former State time at the old rate. 71 Pa.C.S. § 5504. Their new service will be subject to the rules in effect when they re-enter State service. When we examine the various categories by referring to continuous *membership* in the State System instead of continuous employment with the State, it becomes obvious that the Commonwealth Court was correct in granting relief to the various categories as it did.

Those employees who are fired or laid off and reinstated because of a civil service order, court order, arbitration award, settlement agreement or recall procedure (Catego-

ries 1 and 2) are inactive members and are protected *if* they left their accumulations in the retirement fund. Employees on paid or unpaid leave are active members as long as they continue making contributions or keep their accumulations in the fund (Category No. 3). Category 5 employees are also protected because they kept their accumulations in the fund. Only Category 4 employees were correctly denied relief because they withdrew their accumulations, thereby voluntarily choosing to terminate their continuous membership status with the system and losing any rights they formerly had.

One very interesting feature of this analysis is that even fired employees are protected if they are rehired by the State at a later time as long as they keep their contributions in the System. However, if they are worthy enough to be reconsidered for State employment, it is not inconsistent that the State would want to extend to them these same protections. Many employees are involuntarily terminated when their employers' term of office expires and if they are rehired at a later time, they, too, would be protected because they remained members of the System.

The order of the Commonwealth Court is affirmed.

LARSEN, J.; files a concurring and dissenting opinion.

LARSEN, Justice, concurring and dissenting.

Before us are the cross appeals of the American Federation of State, County and Municipal Employees Council 13, AFL–CIO and Joint Bargaining Committee of the Pennsylvania Social Services Union and the Pennsylvania Employment Security Employees' Association, Locals 668 and 675, SEIU, AFL–CIO, and Dennis J. Solecki and Lea F. Barbush (collectively AFSCME), and the State Employees' Retirement Board (Board) challenging an order of the Commonwealth Court which granted partial summary judgment to both AFSCME and the Board. This action was initiated by AFSCME seeking enforcement of the Commonwealth Court's order of March 7, 1984 entered in the case of *AFSCME v. Commonwealth,* 80 Pa.Cmwlth. 611, 472 A.2d

746 (1984), aff'd sub nom, *Association of Pennsylvania State College and University Faculties v. State System of Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984) which permanently enjoined the Board from collecting pension contributions in excess of five (5%) percent from employees who were members of the State Employee's Retirement System prior to the enactment of Act 31 of 1983 which became effective July 22, 1983. Under Section 7 of Act 31 the basic pension contribution for members of the retirement system was increased from five (5%) percent to six and one-quarter (6¼%) percent. The Commonwealth Court held in its March 7, 1984 ruling that Section 7 of Act 31 which mandated the increased pension contribution rate was an unconstitutional impairment of the right to contract for both vested and non-vested members. 80 Pa.Cmwlth. at 616, 472 A.2d at 748.

AFSCME initiated the present action for enforcement of previous order of March 7, 1984 alleging that the Board was improperly requiring the 6¼% employee contribution rate to the following members of the retirement system:

(1) Employees who have been suspended, terminated or discharged from employment and have subsequently been returned to employment because of an arbitration award, civil service order, court order, lawsuit, or settlement of a claim for reinstatement;

(2) Employees who have been separated from their employment and subsequently returned to work pursuant to statutory or contractual provisions such as recall rights;

(3) Employees who have been on extended authorized leaves of absence with or without pay;

(4) Employees who have been separated from employment either voluntarily or involuntarily and who subsequently returned in a manner or method reinstating their accrued seniority rights including credit for prior service; and

(5) Employees who have been separated either voluntarily or involuntarily from their employment and who

have subsequently returned to active pay status but who maintained their member's status throughout the separation period.

AFSCME argues that, pursuant to a management directive issued after the March 7, 1984 order, the Board improperly imposed the new 6¼% contribution rate on employees who were members of the retirement system prior to Act 31 but who became separated, either voluntarily or involuntarily, from active employment for a period of in excess of fourteen (14) calendar days and who returned to active employment after July 21, 1983.

The Commonwealth Court agreed, in part, with AFSCME and held:

"[The] prior March 7, 1984 order applies to *all* employees who were members of the [State Employees Retirement System] prior to the enactment of Act 31 and who, in spite of a break in service, maintained their membership by leaving their accumulated contributions in the retirement fund." (Emphasis in original.)

111 Pa.Cmwlth. at 89, 533 A.2d at 788. The Commonwealth Court went on to grant partial summary judgment to AFSCME by directing enforcement of its March 7, 1984 order as to separated employees who are active members of the retirement system by virtue of continuing their pension contributions, and as to those separated employees who are inactive members of the retirement system by virtue of maintaining their accumulated deductions in the fund. 111 Pa.Cmwlth. at 89–91, 533 A.2d at 789. The Commonwealth Court also granted partial summary judgment to the Board by holding that the increased contribution rate of 6¼% may be applied to separated employees who withdrew their accumulated deductions prior to resuming state employment. *Id.* Since I would hold that the Commonwealth Court erred in granting partial summary judgment to the Board, I must dissent to the majority's per curiam order affirming the Commonwealth Court's opinion and order.

This Court has recognized that the retirement system constitutes a contract between the governmental employer

and its employees. The contract is created when the employee becomes a member of the employees' retirement system. See *Catania v. Commonwealth, State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982) (plurality opinion); *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A.2d 233 (1954). Indeed, the Commonwealth Court in its order of March 7, 1984 held that the increase in the pension contribution rate from 5% to 6¼% as applied to vested and non-vested members of the system was an unconstitutional impairment of the right to contract. Every state employee who was a member of the system prior to the passage of Act 31 has contractual rights in the system established at the time of membership. As long as membership in the retirement system continues[1] or the employment relationship is maintained, the contractual rights may not be impaired. The Commonwealth Court in granting partial summary judgment to the Board sanctioned an impairment of those rights in this case by authorizing the Board to impose the higher 6¼% contribution rate as to employees who were members of the retirement system prior to the effective date of Act 31, and who temporarily left active state employment and withdrew previous pension contributions before returning to state service. The order permits the higher rate even though the employee who has returned to active employment maintained an employment relationship while separated.

An employee who was a member of the retirement system prior to the enactment of Act 31, who is unjustly

1. The State Employees' Retirement Code defines four kinds of membership in the retirement system:
    *Active Member.* A State Employee, or a member on leave without pay, for whom pickup contributions are being made to the fund.
    *Annuitant.* Any member on or after the effective date of retirement until his annuity is terminated.
    *Inactive Member.* A member for whom no pickup contributions are being made but who has accumulated deductions standing to his credit in the fund and who is not eligible to become or has not elected to become a vestee or has not filed an application for an annuity.
    *Vestee.* A member with ten or more eligibility points who has terminated state service and has elected to leave his total accumulated deductions in the fund and to defer receipt of an annuity.

discharged from state service and who, many months later, prevails in his claim for reinstatement, should not be subject to the increased pension contribution rate because he had to withdraw his previous pension contributions to provide for himself and his family. The same is true for an employee who is laid off and withdraws his pension contributions to survive while waiting for return to active service under either civil service law in a collective bargaining agreement. In each case the separated employee has maintained an employment relationship and upon return to active employment is entitled to be restored to his prior position with the same contractual rights initially acquired upon membership in the retirement system.

I would reverse that part of the Commonwealth Court Order which grants summary judgment to the Board.