560 A.2d 263

**Joseph R. GLANCEY, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 8, 1989.

Decided June 12, 1989.

458

John Rogers Carroll, Carroll & Carroll, Philadelphia, for petitioner.

Abbott A. Leban, Chief Counsel, Harrisburg, for respondent.

Before CRAIG, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

## OPINION

BARRY, Judge, in support of affirmance:

Joseph R. Glancey appeals an order of the Commonwealth of Pennsylvania State Employes' Retirement Board (Board) which denied his application for retirement benefits.

Glancey became a judge of the Philadelphia Municipal Court, effective January 6, 1969, and he remained in that office until he resigned on March 31, 1988. During his tenure as a judge, Glancey contributed into the retirement system as required by the State Employes' Retirement Code.[1] After resigning, Glancey filed an application for retirement benefits in which he sought to withdraw all of his own contributions (option 4) and receive a reduced retirement allowance for the rest of his life (option 1). 71 Pa.C.S. § 5705. The Board determined that Glancey was entitled to no more than the return of his own contributions and the statutory interest on those contributions. To support its decision, the Board relied upon various provisions of Article V of the Pennsylvania Constitution and the circumstances of Glancey's resignation.

A thorough discussion detailing Glancey's present status can be found in the Supreme court opinions of *In the Matter of Glancey*, 515 Pa. 201, 527 A.2d 997 (1987) (*Glancey I*) and *In the Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988) (*Glancey II*). For our present purposes, it is sufficient to note that the Judicial Inquiry and Review Board (JIRB) had recommended the removal of Glancey because of misconduct. After the JIRB had made its recommendation but before the matter was argued and decided by the Supreme Court, Glancey resigned. Following its

1. At the time Glancey joined the retirement system, the State Employes' Retirement Code of 1959, Act of June 1, 1959, P.L. 392, was in effect. The Legislature substantially revised the 1959 Code when it enacted the State Employes' Retirement Code of 1974, 71 Pa.C.S. §§ 5901–5956 (Supp.1988–89). For the purposes of this case, the differences between the two acts are not relevant.

constitutionally mandated review of the record of the JIRB, the Supreme Court entered an order which "forever barred [Glancey] from holding judicial office in this Commonwealth." *Glancey II* at 288, 542 A.2d at 1356.

Article V, Section 16(b) of the Pennsylvania Constitution, which became effective on January 1, 1969, 5 days before Glancey's term as a judge commenced, provides, "No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed under section 18 of this article or under Article VI." Section 18, which created the JIRB, contains the following pertinent provision, "A justice, judge or justice of the peace ... removed under this section 18 shall forfeit automatically his judicial office and *thereafter be ineligible for judicial office.*" Pa. Const. Article V, Section 18(*l*).

■ Glancey first argues that he was not "removed" from office and therefore, Article V, Section 16(b) does not apply. He relies upon the following statement in the majority opinion of *Glancey II.*

> Having thus concluded that [Glancey's] conduct warrants severe discipline with no compelling reasons for us to hold otherwise, we would have no hesitancy in accepting the Board's recommendation of removal. In view of Judge Glancey's submission of resignation and its acceptance by the Governor, the entry of a formal order of removal is unnecessary.

*Glancey II* at 288, 542 A.2d at 1356. Glancey believes that his resignation before a formal entry of removal, as expressed in Article V, Section 16(b), rendered that section inapplicable. We do not agree.

Both Glancey and the Board place heavy reliance upon various concurring, concurring and dissenting, and dissenting opinions of the individual justices of the Supreme Court as expressed in a number of cases. Both parties rely upon these opinions to predict how the individual justices will vote on this case should the Supreme Court grant discretionary review. While all of those opinions certainly are

persuasive, none expresses the view of a majority of the Supreme Court. We refuse to engage in speculation as to how the individual members will vote on any case in the future, especially where majority opinions of the Supreme Court provide the necessary support for our conclusion.

The Supreme Court, in a majority opinion, stated, "The sanction of removal, which carries with it an automatic bar from ever holding judicial office in this Commonwealth in the future, expressly mandates forfeiture of the office." *In the Matter of Cunningham*, 517 Pa. 417, 426, 538 A.2d 473, 478 (1988). The Court stated, "While suspension, like removal, requires that the salary cease from the date of the entry of such an order ..., it does not carry with it the automatic forfeiture of office that is mandated for the sanction of removal under subsection (1)." *Id.* (footnotes and citations omitted).

In *Glancey II*, immediately after stating that entry of a formal order of removal was unnecessary, the Court went on to state:

> [H]is resignation would not preclude him from seeking judicial office at some point in the future. Based upon his serious dereliction while he served in the office of judge, and our responsibility to maintain the integrity of the judicial system, it is appropriate that we enter an order forever barring [Glancey] from seeking or holding judicial office pursuant to Article V, Section 18(1) of our constitution.[11]

> ---
> [11] At oral argument, counsel for the Board urged this Court to deny [Glancey] eligibility for pension benefits based upon Article V, section 16(b) of the Pennsylvania Constitution. However, because this question has not been properly presented before the Court, we will not consider it in this matter.

*Glancey II* at 288, 542 A.2d at 1356.

There can be no question but that the Supreme Court forever barred Glancey from holding judicial office, based upon his misconduct. Just as Glancey's resignation could not permit him to evade this bar, his resignation cannot be used to evade another section of Article V, especially where a majority of the Supreme Court has explicitly recognized

that being forever barred from holding judicial office flows *automatically from the sanction of removal. Cunningham.* We therefore believe that the entry of an order forever barring Glancey from holding judicial office constitutes an implicit order of removal for purposes of Article V, Section 16(b).

Glancey next argues that retirement benefits are not "compensation" as that term is used in Article V, Section 16(b). Over fifty years ago, the Supreme Court made clear that public retirement benefits are deferred compensation. *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 174 A. 400 (1934). Despite a long line of cases which holds that public retirement benefits are deferred compensation, Glancey argues that for three reasons, such benefits are not compensation. For the following reasons, his argument is not well taken.

Before considering the three reasons in support of Glancey's position, we are convinced that a literal reading of the following sections of Article V shows the flaw in his argument. As already mentioned, Article V, Section 16(b) provides that no judge removed or suspended under Section 18 shall be paid *compensation.* Section 18(h) provides that upon an order of removal or suspension, the judge's *"salary* shall cease from the date of such order." (Emphasis added.) We believe the use of the two terms (salary and compensation) is significant. "Compensation" is defined as "payment . . . for service rendered." Webster's Third New International Dictionary 463 (1966). "Salary", on the other hand, is defined as "fixed compensation paid regularly (as by the year, quarter, month or week) for services . . . ." *Id.* at 2003. A review of these definitions shows that "salary" is a part of a total compensation package, more specifically, *present* compensation. Public retirement benefits, again, are *deferred* compensation. Once a judge is removed and therefore has forfeited his office, no more services may be rendered and no more salary can be due. It necessarily follows that the section 16(b) prohibition against paying "compensation" to a removed judge must refer to deferred

compensation, i.e. retirement benefits. That a judge makes contributions to a retirement fund out of salary troubles us not, as those contributions plus statutory interest will be returned to the errant jurist. In light of our view of the meaning of the Constitution, we believe Glancey's argument that retirement pay is not compensation is meritless. We will nonetheless briefly discuss his specific arguments in this regard.

He first argues that he has a vested right in the payment, having served the required ten years for a vested pension. In *McGovern*, the court stated, "The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and *complies with the terms, conditions and regulations imposed upon the receipt of retirement pay." Id.* at 169, 174 A. at 404 (emphasis added). What Glancey fails to recognize is that Sections 16 and 18 of Article V constitute "terms and conditions" upon which the receipt of retirement pay is premised. Put another way, at the time Glancey joined the system, that system provided that a judge could collect retirement pay unless he was removed from office under Section 18 of Article V. For that reason, Glancey's arguments concerning vested rights are meritless.

Glancey also argues that he should be entitled to collect that portion of his retirement pay earned while he engaged in "exemplary service." He thus argues that the retirement contract is somehow divisible and if he is to be disqualified, the disqualification should go to that period in which he engaged in misconduct. In support thereof, Glancey cites the opinion of Justice (now Chief Justice) Nix in *Miller v. State Employees' Retirement Board*, 498 Pa. 103, 445 A.2d 88, 90 (1981), which involved the application of the Public Employees Pension Forfeiture Act, Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§ 1311–15 (Supp.1988–89). That act provided that one convicted of crimes relating to public employment would forfeit retirement benefits. The public employees there, like Glancey, had served the required ten years to obtain a vested pension prior to the effective date of the act. By an equally divided court, the

Supreme Court affirmed this court's order that the act could not be applied retroactively to deny retirement benefits to those whose rights had vested. Generally, *Miller* is inapposite to the present case which concerns Article V of the Constitution, the relevant portions of which were in effect at the time Glancey became a member of the system.

Specifically, Glancey relies upon the following statement of Justice Nix.

[The public employee involved] did not enjoy continuous service from the date of his first election to office to the date of his retirement. To the contrary, his tenure depended upon the election of the people of the district for each two year term. At the beginning of each successive term the oath was administered. Applying the theory of the advocates of reversal, it could at best refer to the rights and benefits that accrued during the last term [the public employee] served. There is no logical or legal basis, even accepting the validity of the theory in general, that would justify the forfeiture of benefits derived during the earlier terms where [he] served without ostensibly violating the provisions of the oath.

*Miller* 498 Pa. at 108, 445 A.2d at 90. Aside from the fact that this statement in an equally divided court represents the view only of the present Chief Justice, it has no applicability to the present case because of the existence of the pertinent constitutional provisions when Glancey began to serve.

Finally, Glancey argues that the loss of retirement benefits would constitute a forfeiture. Glancey is correct; unfortunately for him, this forfeiture is mandated by the people through the Pennsylvania Constitution.

We have no doubt that a judge who loses his or her pension benefits under these circumstances will suffer personal hardship. The Constitution, however, is clear and any judge, such as Glancey, who is found to have engaged in conduct which requires permanent ineligibility to hold judicial office must suffer the unavoidable consequences of such conduct.

CRUMLISH, Jr., President Judge, and DOYLE, J., did not participate in the decision in this case.

CRAIG and PALLADINO, JJ., join in this opinion.

COLINS, Judge, in support of reversal:

The facts of this matter are adequately set forth in the opinion in support of affirmance, p. 264. We shall not reiterate them here.

We cannot agree with the conclusion, as stated in the opinion in support of affirmance, that the petitioner was "removed" from office pursuant to article V, Section 16(b) of the Pennsylvania Constitution. In fact, the language in *In the Matter of Glancey,* 518 Pa. 276, 542 A.2d 1350 (1988) (*Glancey II*), relied upon by the opinion in support of affirmance would seem to indicate otherwise. If the Pennsylvania Supreme Court wished to remove petitioner, it simply could have entered an order doing so. However, this, quite specifically, was not done.

Furthermore, in Pennsylvania, public retirement benefits are viewed as deferred compensation, with contractual rights, protected by both the United States and Pennsylvania Constitutions. *See* U.S. Const. art. I, § 10 and Pa. Const. art. I, § 17; *Catania v. State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982). These contractual pension rights become fixed upon the employee's entry into the system and cannot be subsequently diminished or adversely effected. *Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984). Of course, the specific constitutional provisions of article V, Section 16(b) of the Pennsylvania Constitution would overrule any contractual rights that petitioner may have had assuming he had been "removed" from office.

Additionally, a spouse has vested property rights to a pension annuity when the accumulation and vesting of the annuity has taken place during the period of the marital relationship. This issue has not been discussed below, and

it would seem that the petitioner's spouse would have to be joined as a real party in interest before any final determination of property rights could be made.

Having stated the above, it is noted that the Supreme Court is the final arbiter of all matters regarding judicial removal and entitlement to compensation within the Commonwealth and, therefore, any further discussion of the matter by this Court will only serve to delay the ultimate conclusion of this unfortunate controversy.

The decision of the Pennsylvania State Employes' Retirement Board should be reversed.

CRUMLISH, Jr., President Judge, and DOYLE, J., did not participate in the decision in this case.

McGINLEY and SMITH, JJ., join in this opinion.

### ORDER

PER CURIAM.

NOW, June 12, 1989, the Court being equally divided, the order of the Pennsylvania State Employes' Retirement Board dated July 20, 1988, is hereby affirmed.