565 A.2d 839

**The Honorable Thomas A. WHITE, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1989.

Decided Oct. 31, 1989.

336

James E. Beasley, with him, Kathleen A. Barrett, Beasley, Casey, Colleran, Erbstein, Thistle, Kline and Murphy, Philadelphia, for petitioner.

Abbott A. Leban, Chief Counsel, for respondent.

Before DOYLE, BARRY, PALLADINO, McGINLEY and SMITH, JJ.

DOYLE, Judge.

Before this Court is an appeal by Judge Thomas A. White (Petitioner) from an order of the State Employes' Retirement Board (Board) denying Petitioner's application for retirement benefits. The Board order, which was entered without affording Petitioner notice and an opportunity to be heard, permitted Petitioner to withdraw his own contributions and the interest thereon, but denied the application in all other respects.

It appears to be undisputed that Petitioner was elected to the Philadelphia Court of Common Pleas as a judge in November of 1977. He was reelected to a second ten year term in November 1987. On July 20, 1988 the Pennsylvania Supreme Court directed that Petitioner be removed from judicial office.[1] The court also ordered that Petitioner's salary cease from that date and that he be thereafter ineligible to hold judicial office. *See Cunningham*, 517 Pa. at 450, 538 A.2d at 490 (1988). On May 23, 1988 Petitioner filed an application with the State Employes' Retirement System (System) seeking to withdraw a lump sum amount

---

1. Petitioner was removed from office because the court determined that he had accepted a cash gift from a roofers union "enabling Roofers Union officials to entertain the impression that they were in a special position to influence him." *Matter of Cunningham*, 517 Pa. 417, 443, 538 A.2d 473, 487, *appeal dismissed sub nom. White v. Judicial Inquiry and Review Board*, —— U.S. ——, 109 S.Ct. 36, 102 L.Ed.2d 16 (1988).

equal to his accumulated deductions, *i.e.*, his own contributions including the statutory interest thereon, plus a reduced retirement allowance for life. The Board, without giving Petitioner notice or the opportunity for a hearing, denied the application and asserted that, with the exception of Petitioner's own contributions to the system and the statutory interest on those contributions, he was precluded from receiving his retirement benefits pursuant to Article V, Section 16(b) of the Pennsylvania Constitution. That Section provides:

> Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. *No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.* (Emphasis added.)

Petitioner was removed from office pursuant to Article V, Section 18, which provides that the Judicial Inquiry and Review Board (JIRB) may, after investigation, conduct a hearing concerning, *inter alia*, the suspension or removal of a judge. If, subsequent to the hearing, JIRB finds good cause, it may recommend that a judge be suspended or removed from judicial office. The Supreme Court is then to consider the record, and, if it chooses, may also take additional evidence. The Supreme Court then imposes the discipline, if any, which it believes is warranted. Section 18(h) specifically provides that once suspension or removal is ordered the judge's "salary shall cease from the date of such order."

The question we are called upon to decide is whether Section 16(b) precludes Petitioner from receiving the rest of his retirement benefits. There are, however, factual questions which are unresolved and for this reason we shall decline to reach certain constitutional issues at this juncture of the case and shall remand for a hearing and findings of fact.

As previously noted, there has been no hearing in this case. It is evident to this Court, however, that such a hearing is needed because we lack necessary findings of fact. Petitioner alleges in his brief that he was elected to the Pennsylvania legislature in 1952 and served from 1953 through 1954. He maintains that he initially became a member of the System when he took office as a legislator in January of 1953. He further asserts in his brief that in 1959 he withdrew the retirement benefits attributable to his service in the legislature, but then repaid those benefits back into the System in 1978 when he entered judicial office.

With respect to these allegations the Board's brief indicates:

> The details of [Petitioner's] service [with the legislature] and the resulting relationship with the State Employees' Retirement System ... are outside the record of this matter. [The System] files indicate that [Petitioner] did not participate in [the System] while serving as a legislator. Not until after [Petitioner] entered on judicial service in 1978 did he seek and receive retirement credit (two years of Class A service credit) for his prior legislative service. Regardless of whether [Petitioner] had earlier participated in [the System] and withdrew his accumulated deductions after terminating his legislative service, or whether he first participated in [the System] as a judge and purchased credit for the prior legislative service during his judicial tenure, it would appear that the two years of Class A service credit, standing alone, would not qualify [Petitioner] for a retirement benefit.

Board's brief at 12–13, n. 5.

We believe, however, that the question of whether Petitioner became a member of the System during his legislative term of office may be of critical importance. In *Catania v. State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982) (*Catania I*), plaintiffs, who were members of the judiciary, filed a suit originally in this Court in the nature of mandamus and declaratory judgment.

They sought a determination that certain 1972 modifications to the State Employees' Retirement Code of 1959 (1959 Code)[2] as well as the modifications embodied in the 1974 State Employees' Retirement Code (New Code), 71 Pa.C.S. §§ 5101 through 5956, could not be applied to them. The Supreme Court, which had accepted plenary jurisdiction, observed that the plaintiff-judges fell into three classes: (1) those who had completed ten years of judicial service after June 22, 1972 (the effective date of the 1972 modifications) but before March 1, 1974 (the effective date of the New Code) (2) those who had commenced judicial service before June 22, 1972 and had completed ten years of service after March 1, 1974 and (3) one plaintiff who had commenced judicial service between June 22, 1972 and March 1, 1974 and would complete ten years service after the latter date. It should be noted that the 1972 modification, while it raised the annual salaries of judges, merely "froze" their "final average salary," which was a figure used as one of three multipliers to compute retirement benefits. Simply put, the higher the final salary the greater the benefits. The New Code retroactively abolished the freeze on final salaries but, *inter alia*, reduced another multiplier in the formula.

The Supreme Court held that with respect to the first category of plaintiffs (those who had completed ten years of service after June 22, 1972 but before March 1, 1974) the modifications could not be applied because they worked an unconstitutional impairment of the state's contractual obligations to those plaintiffs under both Article 1, Section 17 of the Pennsylvania Constitution, *and* Article 1, Section 10 of the U.S. Constitution which pertinently provides, "No State shall ... pass any ... Law impairing the Obligation of contracts...." Hence, the court granted summary judgment in their favor. The court could not reach a consensus with respect to the other two classes. Accordingly, it denied summary judgment to those plaintiffs and remanded

2. Act of June 1, 1959, P.L. 392, *as amended, formerly* 71 P.S. §§ 1725–101 though 1725–809, repealed by Section 2(a) of the Act of March 1, 1974, P.L. 125.

the case to this Court indicating that the Commonwealth Court should consider the question and reach a decision.

Our Court then decided *Catania v. State Employees' Retirement Board,* 71 Pa.Commonwealth Ct. 393, 455 A.2d 1250 (1983) (*Catania II*). We held therein that with respect to both of the other groups of plaintiffs, any attempt to apply the modifications to them would be an unconstitutional impairment of the obligation of contracts and would, in addition, result in the diminution of the judges' compensation during their terms of office, another constitutional violation. *Catania II* is relevant because, if in fact Petitioner here became a member of the System prior to 1959, his rights *may* have been fixed by the 1959 Code without regard to the contractual modifications implicit in and by the constitutional changes which occurred on April 23, 1968 with the adoption of Article V, Section 16 of the present Constitution. Judge Barry, in his opinion in support of affirmance in *Glancey v. State Employes' Retirement Board,* 126 Pa.Commonwealth Ct. 457, 560 A.2d 263 (1989), incisively wrote:

> What Glancey fails to recognize is that Sections 16 and 18 of Article V constitute 'terms and conditions' upon which the receipt of retirement pay is premised. Put another way, at the time Glancey joined the system, that system provided that a judge could collect retirement pay unless he was removed from office under Section 18 of Article V. For that reason, Glancey's arguments concerning vested rights are meritless.

*Glancey,* at 463, 560 A.2d at 266. Had the Petitioner in the case now presented to us joined the System *prior to* the adoption of Sections 16 and 18 of Article V, the question of whether or not those constitutional provisions would constitute "terms and conditions" of *his* contract, retroactively applied, would then be squarely before us. But, whether or not Petitioner did in fact become a member of the System in 1953 appears, based upon our reading of the respective briefs in this case, to be unclear. Hence, the necessity for a

remand. Only after that fact is determined can the constitutional issues be addressed.

Furthermore, subsequent to the *Catania* cases being filed, the Pennsylvania Supreme Court decided the companion cases of *Goodheart v. Casey*, 521 Pa. 316, 555 A.2d 1210 (1989), and *Klein v. State Employees' Retirement System*, 521 Pa. 330, 555 A.2d 1216 (1989). In both cases the court opined that members of the judiciary who had joined the System *after* March 1, 1974, were entitled to receive the more favorable benefits granted to those members of the judiciary who had joined the System before the New Code became effective. In *Goodheart* the court's decision was based upon a determination that treating *pre* and *post* March 1, 1974 judges differently resulted in those judges attaining the bench after March 1, 1974 being inadequately compensated. Specifically, it was the court's determination that the reduction of retirement benefit coverage coupled with the increase in employee contributions under the New Code unconstitutionally impaired the independent functioning of the judiciary by providing less than adequate compensation. In *Klein* the court reasoned much as it had in *Goodheart*, but also held that the New Code changes were inapplicable to the judiciary because applying them would constitute a denial of equal protection to those individuals assuming the bench after March 1, 1974.

■ *Catania, Goodheart,* and *Klein,* when read together, indicate that those members of the judiciary who are in the System, whether or not their pensions have vested, cannot be subject to amendments or modifications which (1) impair contractual obligations due them or (2) impact detrimentally upon their retirement benefits.[3] What these cases

---

3. We observe that the employment at issue here did not involve the judiciary, but the legislature. It thus appears that *Goodheart* and *Klein* are not applicable to this case although we discuss them for the sake of completeness. They are not directly applicable because their holdings were based, not, as in the *Catania* cases, upon an unconstitutional impairment of the obligation of contracts, a claim available to *any* state employee, but upon an unconstitutional impairment upon the independent functioning of the judiciary, a claim which could be asserted only by a member of the bench.

do not address, however, is whether their prohibitions against applying modifications to retirement contracts pertain to a situation where an employee *withdraws* his contributions from the System and then elects to return to the System and repay that which had been previously withdrawn.

That question is answered in *American Federation of State, County and Municipal Employees, Council 13 v. Commonwealth*, 520 Pa. 363, 554 A.2d 39 (1989) (*AFSCME*). In *AFSCME*, Justice Papadakos held that continuous employment with the Commonwealth is not a condition by which statutorily conferred retirement benefits are fixed. Thus, he made it clear that as long as members were "active" in the System and maintained their membership in the System by leaving accumulated contributions in the retirement fund they were not subject to a later amendment which required members of the System to contribute an additional percentage of their salary to the System. *AFSCME* teaches that employees who are on leave of absence or who have been separated from employment, whether voluntarily or involuntarily, and who subsequently return to employment maintain their status as members of the System. The case also clearly holds, however, that if an individual who has been suspended, removed, furloughed or is on leave of absence withdraws all of his contributions from the System he thereby discontinues his status as a member and that later enacted legislation can be applied to him. Additionally, the case clearly indicates that withdrawal of one's own contributions is all that is necessary.

Petitioner alleges in his brief that he withdrew his retirement benefits in 1959. Assuming this to be true, whatever benefits he is entitled to based upon his legislative service could now be computed under the New Code. However, the Board as indicated in its brief, has no record of Petitioner ever having participated in the System in the 1950s nor, consequently, of his having withdrawn any con-

tributions. Thus, a remand is necessary for a determination of whether or not Petitioner was in fact a member of the System in the 1950s and, if he was, whether he withdrew his benefits thus, under *AFSCME*, terminating his membership and subjecting himself to the modifications implemented by the New Code.

Based upon the foregoing discussion, the order of the Board in the above-captioned case is hereby vacated and this case is remanded for findings of fact and an adjudication consistent with this opinion.[4]

## ORDER

NOW, October 31, 1989, the order of the Board in the above-captioned matter is hereby vacated and this case is remanded for further findings of fact consistent with this opinion.

Jurisdiction relinquished.

CRUMLISH, Jr., President Judge, did not participate in the decision in this case.

SMITH, J., dissents.

McGINLEY, Judge, dissenting.

I respectfully dissent. As I stated in my dissenting opinion in *Shiomos v. State Employes' Retirement Board,* 128 Pa. Commonwealth Ct. 39, 562 A.2d 969 (1989) "while public retirement benefits are deferred compensation, it does not necessarily, nor reasonably follow that ... retirement benefits are 'compensation'" as that term is used in Article V, Section 16(b) of the Pennsylvania Constitution.

---

4. Because critical facts are missing, we have not addressed the other issues raised by Petitioner. Were we to do so, however, we would deem *King v. State Employees' Retirement Board,* —— Pa.Commonwealth Ct. ——, 566 A.2d 323 (1989), to be controlling.