587 A.2d 371

**Joseph P. BRAIG and Deborah E. Braig, h/w, Petitioners,**

**v.**

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1990.

Decided Feb. 21, 1991.

126

[redacted]

Barbara R. Axelrod, with her, James E. Beasley, Beasley, Casey, Colleran, Erbstein, Thistle & Kline, Philadelphia, for petitioners.

Abbott A. Leban, Chief Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, KELLEY and BYER, JJ.

CRAIG, President Judge.

Joseph and Deborah Braig appeal a decision of the Pennsylvania State Employes' Retirement Board (board) that denied Joseph Braig's application for a retirement allowance. This court must reverse the decision of the board.

Joseph Braig was elected as a judge of the Court of Common Pleas of Philadelphia County in 1975 for a ten-year term, which he began to serve on January 1, 1976. In January 1986, he began to serve a second ten-year term in that office. Braig resigned his position as a judge in March 1989.

On June 29, 1989, Braig pleaded guilty to a charge of mail fraud, which arose from a fraudulent and inflated damage claim he had submitted to his homeowner's insurance carrier.

After Braig resigned from office, but before the trial court imposed sentence on him, he filed an application for a retirement allowance with the State Employes' Retirement System (SERS). On August 4, 1989, the board issued an order to show cause why Braig's application should not be

denied on the ground that provisions of Article V of the Pennsylvania Constitution prohibit the monthly annuity payments for which he applied. The order also granted the portion of Braig's application that requested SERS to return to Braig the accumulated deductions representing his employee contribution. SERS repaid Braig his contribution with four percent interest.

Concurrent with the board-related proceedings, on September 8, 1989, the Pennsylvania Judicial Inquiry and Review Board (JIRB) petitioned the Pennsylvania Supreme Court to issue a rule to show cause why Braig should not be declared automatically removed from office. JIRB contended that Braig's guilty plea constituted a conviction for "misbehavior in office" under Article V, § 18(l) of the constitution. The Supreme Court has not yet acted upon JIRB's petition.

Braig filed a brief in response to the retirement board's rule to show cause. The board issued an opinion on February 2, 1990, affirming its denial of Braig's application for retirement benefits.

The board concluded that Braig had been convicted of a felony, mail fraud; that the conviction of a felony constituted an "infamous crime" under the removal provision of Article VI, § 7 of the Pennsylvania Constitution; that the removal provision is self-executing; that a judge who is removed from office under that article is not entitled to "compensation" under Article V, § 16(b) of the constitution; that the term "compensation" includes state retirement allowances or pensions; and that under Article V, § 16(b), Braig is therefore not entitled to retirement benefits accrued up to the time he committed the acts constituting the offence of which he was convicted.

Those constitutional sections, on which the board relies, read as follows:

### Article VI, § 7. Removal of civil officers.

All civil officers shall hold their offices on the condition that they behave themselves well while in office, and

shall be removed on conviction of misbehavior in office or of any infamous crime.... All civil officers elected by the people, except.... judges.... shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate. **Article V, § 16(b). Compensation and retirement of justices, judges and justices of the peace.**

(b) .... No compensation shall be paid to any.... judge who is suspended or removed from office under section eighteen of this article or under article six.

The board further concluded that Braig's resignation after his indictment, but before his conviction, did not remove his conduct from the application of Article VI. The board determined that applying the state constitution to preclude the granting of pension benefits does not deprive Braig of the equal protection of the laws under the state or federal constitutions. Finally, the board concluded that nothing in this case required the board to defer resolution of the matter to the state Supreme Court's exclusive jurisdiction under Article V, § 18 of the constitution.

Article V, § 18 reads in relevant part as follows:

**§ 18 Suspension, removal, discipline and compulsory retirement**

(a) There shall be a Judicial Inquiry and Review Board.....

(d) Under the procedure prescribed herein, any justice or judge may be.... removed.... for violation of section seventeen of this article, misconduct in office.... or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute

. . . . .

(f) The board, after such investigation, may order a hearing concerning the suspension, removal, discipline.... of a judge.

(g) If, after hearing, the board finds good cause therefor, it shall recommend to the Supreme Court the suspension [or] removal.... of the.... judge.

(h) The Supreme court shall review the record of the board's proceedings on the law and facts and may permit the introduction of additional evidence. It shall order suspension, removal, discipline or compulsory retirement, or wholly reject the recommendation, as it finds just and proper.

(1) A.... judge convicted of misbehavior in office, disbarred as a member of the bar of the Supreme court or removed under this section eighteen shall forfeit automatically his judicial office and hereafter be ineligible for judicial office.

(n) *This section is in addition to and not in substitution for the provisions for.... misbehavior in office contained in article six.* (Emphasis added.)

On appeal from the board's decision, Braig raises the following issues:

1. Did Article V, § 18 of the constitution supersede Article VI, § 7, so that the board erred in concluding that Braig was removed from office upon conviction under Article VI, § 7?

2. Has Judge Braig been "removed on conviction" where the district court did not order removal as part of its sentence and where the Supreme Court has not acted upon the Judicial Inquiry and Review Board's petition to implement forfeiture of Braig's office?

3. Did the board err in concluding that the act for which Braig pleaded guilty was an "infamous" crime?

4. Can Article V, § 16(b) of the Pennsylvania Constitution be construed to require forfeiture of judicial pension rights?

5. If Article V, § 16(b) does apply to pension rights, is the application of the provision limited to rights accruing after the commission of the wrongful act or does the provision apply to rights accrued before the commission of the wrongful act?

6. Did the board exceed its authority in denying Braig his retirement allowance?

*Did Article V supersede Article VI?*

██  Braig argues that the Commonwealth's adoption of Article V modified the scope of Article VI, asserting that Article V, which makes JIRB a disciplinary forum for judicial misconduct matters, supersedes Article VI's application to members of the judiciary.

In contrast, the board points to four provisions in Article V which indicate that the provision for removal contained in that article provides an additional, not an exclusive, means by which to remove judges from office.

The board's interpretation of Article V is persuasive. For example, § 16(b) states in pertinent part that "[n]o compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six." As the board points out, that provision's unqualified reference to Article VI supports the argument that the framers of the constitution intended Article VI's provisions for removal of elected officials to remain applicable to judges in addition to the means adopted in Article V that relate solely to the judiciary.

To hold that Article V renders Article VI's removal provisions inapplicable to members of the judiciary, we would have to conclude that the framers intended to subject members of the judiciary to a single discretionary removal process before JIRB and the Supreme Court, as compared to other elected officials, who remain subject to the removal provision of Article VI, a provision which leaves no room for discretion where an official is convicted of an infamous crime.

Article VI's removal provision makes clear that the framers regarded the conviction of an infamous crime as prima facie justification for removal of officials from elected office. Article VI, § 7 provides a means by which the Commonwealth can eliminate officials whom the framers, and the people of the Commonwealth, have deemed to be per se

unfit for office—any official who has been convicted of an infamous crime.

Finally, Article V, § 18(n) expressly negates any concept that Article V, § 18 supersedes Article VI, because that subsection (n) states that § 18 "is in addition to and not in substitution for the provisions for.... misbehavior in office contained in article six."

Our conclusion is that the framers of the constitution intended to retain alternative methods for removal. The language of Article V and the underlying concern of the framers that the Commonwealth have the most expedient, yet fair means of removing any elected official who is not competent to hold such a position support this conclusion.

*Is Article VI self-executing as to removal from office?*

█ As indicated above, the constitutional provision upon which the board relied, Article VI, § 7, provides that civil officers "shall be removed on conviction of misbehavior in office or of any infamous crime."

In *Commonwealth v. Davis*, 299 Pa. 276, 149 A. 176 (1930), the Supreme Court analyzed the methods by which an elected official could be removed from office under this provision.[1] In that case, an elected official was tried and convicted of, among other acts, misbehavior in office. The trial court stated in its sentence that the official "shall be and is hereby removed from the office of Mayor...." The official argued that the last sentence of § 7, which relates to gubernatorial removal, provided the only method of removal for conviction or misbehavior.

The official contended that the provision is not self-executing, and that the trial court's removal was ineffective. The Supreme Court noted that "[t]he word 'shall' cannot be so minimized, and no authority has been found which suggests that it should be." 299 Pa. at 279, 149 A. at 178. The court continued:

[1] This provision was formerly Article VI, § 4, of the constitution.

The people in adopting the Constitution.... when considering this section, were not dealing with matters needing future action to make them effective.... To them it must have seemed that "on conviction" a removal "shall" result, must have meant just what it said, and not that it meant a removal not "on conviction" but at some future time, in some other proceeding than that which resulted in the conviction, and dependent on other contingencies than those appearing in the Constitution itself." *Id.*, 299 Pa. at 280, 149 A. at 178.

That language could suggest that the mere conviction of an official is sufficient to trigger removal, even without removal as part of a trial court's sentence. However, the court went on to say that:

Naturally they would expect, therefore, as every one else would, that the constitutional provision providing for a specified punishment "on conviction" would be interpreted in exactly the same way—the court on conviction "shall" impose the specified punishment. Especially is this true since the Constitution by article 5 vested all the commonwealth's judicial power in the courts, and the punishment to be imposed "on conviction" had been imposed by the courts from the earliest days of the common law.... *Id.*

The court acknowledged that the underlying thrust of the provision is that once an elected official is convicted of an infamous crime, the official may no longer claim to hold the position. However, the provision clearly is addressed to officials who remain in office before and up to the time of a conviction. Indeed, in all of the early decisions upon which the *Davis* court relied, the trial court also made a specific determination upon the official's conviction that he be removed from office.

Significantly, in this case, the district court was not presented with the removal question because Braig had already resigned.

Contrary to the board's position, the decisions in *Glancey v. Commonwealth, State Employes' Retirement Board,*

126 Pa.Commonwealth Ct. 457, 560 A.2d 263 (1989) (Glancey III), *petition for allowance of appeal granted,* 524 Pa. 613, 569 A.2d 1371 (1989), *Shiomos v. State Employes' Retirement Board,* 128 Pa.Commonwealth Ct. 39, 562 A.2d 969 (1990) (Shiomos I), *petition for allowance of appeal granted,* and *Snyder v. Employes' Retirement Board,* 128 Pa.Commonwealth Ct. 100, 562 A.2d 1000 (1989) (Snyder II), are not directly applicable.

The "intervening event" element of those cases is distinguishable, because the Supreme Court issued an order which this court deemed to be an implicit order of removal. This court concluded in those cases that, for the purpose of the constitution's pension forfeiture provision, the Supreme Court's orders, which barred the judges from ever holding judicial office, were implicit determinations that the Supreme Court had removed them from office; however, in this case, the Supreme Court has not yet acted on JIRB's petition to remove Braig or prohibit him from ever holding judicial office.

Those decisions arose under Article V's removal provision. Although Braig's resignation would not preclude the board from applying the removal provision to his pension compensation if the Supreme Court had acted already on JIRB's petition, the Supreme Court has not yet issued a sanction order which would trigger the application of the compensation provision.

In arguing that the intervening event of Judge Braig's pre-conviction resignation is analogous to the judges' resignations before JIRB and Supreme Court sanctions in the *Glancey* line of cases, the board fails to recognize, as suggested above, that the primary purpose of Article VI's removal provision is to provide the Commonwealth with an expedient means to remove officials who are unfit for office. Unlike Article V, Article VI, § 7 does not provide for sanctions other than immediate removal.

We do not agree with the board that a conviction triggers an implicit removal order under Article VI in the same way that a post-resignation determination by the Supreme Court

under Article V, that an official is barred from ever holding judicial office, constitutes an order of removal, because the objective of Article VI, § 7 is more narrow than the disciplinary purposes of Article V.

Furthermore, under Article V, the Supreme Court has recognized a need for a final disciplinary order. In *Glancey v. State Employes' Retirement Board*, 518 Pa. 276, 542 A.2d 1350, 1353 (1988), the court noted its decision in *Judicial Inquiry and Review Board v. Snyder*, 514 Pa. 142, 151, 523 A.2d 294, 298–299, in which it stated

> [t]his Court is responsible for maintaining the integrity of judicial administration so as to uphold public respect for the rule of law. Once instituted, our jurisdiction over disciplinary proceedings is thus only at an end when we issue a final order.

Similarly, in cases arising under Article VI, the decisional law supports the proposition that when a trial court imposes a sentence on a judge for conviction of an infamous crime, the court should impose removal as part of the conviction sentence. In the Supreme Court decisions, the court recognized the distinction between removal and resignation, and issued specific orders which did not remove the resigned judges, but precluded the judges from ever seeking judicial office again.

Hence, the board exceeded its powers because it does not have the authority to adjudicate the question of whether or not a judge has been or should be removed upon conviction. That determination rests with a trial court under Article VI, and with the Supreme Court under Article V. As noted above, unlike the *Glancey* line of decisions, the Supreme Court has not issued a removal order, implicit or otherwise, and, unlike the early removal cases under Article VI's self-executing provision, the trial court did not include a removal order in its conviction sentence.

Although the disposition of the pivotal issue in this case renders the analysis of Braig's other issues unnecessary, a brief discussion of those issues follows.

*Is mail fraud an "infamous crime"?*

Braig cites a common pleas court decision to support his contention that his inflation of an insurance claim, although a felony, is not an infamous crime. *Com. ex rel. Hazel v. Flannery,* 13 D. & C.3rd 58 (1979) discussed the change in attitudes which is reflected in public opinion regarding what conduct can be characterized as infamous.

However, in accordance with the Supreme Court's decision in *Re: S.M. Greenberg, Judge, Court of Common Pleas of Philadelphia,* 442 Pa. 411, 280 A.2d 370 (1971), in which the Supreme Court noted that Judge Greenberg's conviction of mail fraud for kiting checks constituted an infamous crime, we conclude that Braig was convicted of an infamous crime under Article VI, § 7, because Braig's conviction for mail fraud, which was based on his ongoing unlawful conduct and correspondence with his insurer, constituted acts involving falsehood and deception. *Id.,* 442 Pa. at 417, 280 A.2d at 372, quoting *Commonwealth v. Shaver,* 3 Watts & Sergeant 338, 342 (1842). This court is not persuaded by Braig's argument that Greenberg's mail fraud conviction is distinguishable from Braig's because Greenberg's misconduct continued over a period of several years. The underlying nature of the crime is the pivotal element for analysis, not the number of times or the length of time a judge engages in the misconduct.

*Does Article V, § 16(b) require pension forfeiture?*

In *King v. State Employes' Retirement Board,* 129 Pa.Commonwealth Ct. 444, 566 A.2d 323 (1989), *petition for allowance of appeal granted,* 525 Pa. 589, 575 A.2d 118 (1990), this court considered the question of whether § 16(b) of Article V, which states that "[n]o compensation shall be paid to any ... judge ... who is suspended or removed from office under section eighteen of this article or under article six", precluded Judge King from receiving his retirement benefits other than his own contributions with interest. As the board points out, the court concluded that the framers intended the word "compensation" to include retire-

ment benefits. In that opinion, Judge Doyle's thoughtful analysis of the constitutional amendment process supports the conclusion that § 16(b) of Article V mandates the forfeiture of judicial retirement benefits.

### Is forfeiture limited to pension benefits accruing after the wrongful act?

■ Braig further argues that the forfeiture provision should apply only to the benefits that would accrue after the act which gave rise to a removal and before a removal order is issued. Braig argues that he is entitled to a retirement allowance because his pension vested before the acts which gave rise to his resignation and conviction, and that the contracts clause of the constitution and the state Retirement Code guarantee payment of benefits to employees whose pension rights have vested. However, a statutory provision cannot preempt the application of a constitutional mandate. Also, contract rights are subject to other constitutional restrictions. A party cannot evade one constitutional mandate by relying on a retirement contract into which he entered years before he committed the act for which he was convicted.

### Does pension forfeiture constitute excessive punishment?

■ Braig argues that the Supreme Court has the exclusive power to impose sanctions for judicial misconduct, and hence, that the board usurped the constitutional grant of power to that court by denying Braig pension benefits. Although Article V does vest the Supreme Court with sole power to impose discretionary sanctions on jurists found to be guilty of misconduct, the compensation provision of Article V is not discretionary in nature. As indicated in our discussion above, the provision is mandatory once a judge is removed under Article V or Article VI. In accordance with this opinion, when a judge is removed, the constitution mandates that the judges' pension benefits be forfeited.

## Conclusion

In summary, because the removal provision of Article VI, although applicable, is self-executing only insofar as a conviction for an infamous crime lays a sufficient ground for the inclusion of removal in a trial court's sentence, conviction alone is not sufficient to result in automatic removal. A trial court must also impose removal as part of the sentence. Hence, in this case, because the trial court did not include a removal order, the board exceeded its power in holding that Judge Braig had been removed, and denying him benefits on that basis.

Of course, this decision will not preclude board action at a later date if the Supreme Court follows the JIRB's recommendation to sanction Braig for misbehavior in office under Article V. In accordance with our decision in *Glancey*, the board could then deny Braig his retirement benefits.

The board's decision denying Judge Braig's application for retirement benefits is reversed.

## ORDER

Now, February 21, 1991, the decision of the State Employes' Retirement Board, dated February 6, 1990, denying Joseph Braig's application for retirement benefits, is reversed.

PALLADINO, J., files dissenting opinion, in which DOYLE and BYER, JJ., join.

BYER, J., files dissenting opinion.

PALLADINO, Judge, dissenting.

I respectfully dissent.

Article VI, Section 7 of the Constitution of the Commonwealth of Pennsylvania (Removal Provision) provides that a civil officer "shall be removed upon conviction" of an infamous crime. The majority concludes, and we agree, that Braig was a civil officer and that he was convicted of an infamous crime.

The majority further states that although the Removal Provision is self-executing, the provision only authorizes a trial court to remove convicted officers. Accordingly, the majority holds that the State Employees' Retirement Board (Board) has no authority to consider the impact of the Removal Provision. The majority states that even if the Board has the general authority to apply the Removal Provision, the Removal Provision is not applicable to Braig because he resigned.

The result reached by the majority is flawed for two reasons: (1) the State Employees' Retirement Board must consider the Removal Provision when it reviews applications for retirement benefits; and (2) Braig's fortuitous resignation does not abrogate the effect of the Removal Provision.

As to the first reason, the majority holds that the Removal Provision authorizes only a trial court to remove an officer as part of a criminal sentence. The majority has failed to fully recognize the mandatory and immediate effect of the Removal Provision.

> The Constitution is the voice of the people; they have unequivocally ordained that '*All* officers * * * *shall be removed* on conviction of misbehavior in office or of any infamous crime.' (Emphasis added.) This is a direct recall by the people of criminally unfaithful public servants who, sworn to obey and enforce the law, themselves violate it. *Their self-executing mandate must be complied with....*

*Commonwealth v. Knox,* 172 Pa.Superior Ct. 510, 524, 94 A.2d 128, 134 (1953), *affirmed,* 374 Pa. 343, 97 A.2d 782 (1953) (emphasis added).

The people's self-executing mandate is that convicted officers must be removed. The people have also demanded in Article 5, Section 16(b) of the Constitution of the Commonwealth of Pennsylvania (No Compensation Provision) that a removed officer must receive no compensation. Retirement benefits have been held to be compensation. *King v. State Employees' Retirement Board,* 129 Pa.Common-

wealth Ct. 444, 566 A.2d 323 (1989), *petition for allowance of appeal granted,* 525 Pa. 589, 575 A.2d 118 (1990).

Braig applied to the Board for a retirement allowance. This court has stated that while a self-executing constitutional provision cannot be used to expand an agency's statutory authority, it must restrict the power of an agency when acting within its statutory authority.[1] Here the Board was authorized under the State Employees' Retirement Code (Code),[2] to receive, consider and grant applications for retirement benefits. The Removal Provision and No Compensation Provision directly address the Board's authority under the Code. The Board cannot ignore these constitutional provisions or their restriction on its authority. I believe the Board properly considered the effect of these provisions on Braig's application.

As to the second reason, the majority concludes that the trial court which convicted Braig "was not presented with the removal question because Braig had already resigned."[3] This disposition is based on the majority's conclusion that the purpose of the Removal Provision is merely to provide an expedient means by which to remove officials who are unfit for office and that the provision does not provide for sanctions other than immediate removal.

I believe that the Removal Provision must be read together with the No Compensation Provision. The purpose of these provisions is not only to remove unfit officers but also to submit those officers to all the sanctions which flow from their removal.

1. *See Borough of Moosic v. Public Utility Commission,* 59 Pa.Commonwealth Ct. 338, 343, 429 A.2d 1237, 1240 (1981), and *Community College of Delaware County v. Fox,* 20 Pa.Commonwealth Ct. 335, 358, 342 A.2d 468, 482 (1975).

2. 71 Pa.C.S. §§ 5101–5956.

3. The trial court was the United States District Court of the Eastern District of Pennsylvania. Although the majority discusses whether the trial court was presented with the applicability of the Removal Provision, I believe that whether the trial court should have applied the Removal Provision is irrelevant to the questions presented here.

Braig was convicted of an infamous crime and the constitution mandates that he lose both his office and his retirement benefits. The majority's disposition of this case allows Braig's resignation to nullify loss of his benefits by concluding that his resignation avoids the constitutional sanctions for his conviction. By giving Braig's resignation this insulating effect, the majority is placing in a civil officer's hands the opportunity to obviate constitutional sanctions by fortuitously resigning on the eve of his sentencing.

I believe the Board properly concluded that it was bound by the Removal Provision and that Braig could not use his resignation to avoid constitutional sanctions. Accordingly, I would affirm the Board's order denying Braig's application for a retirement allowance.

DOYLE and BYER, JJ., join this dissent.

BYER, Judge, dissenting.

I respectfully dissent. In addition to the reasons expressed by Judge Palladino in her dissenting opinion, which I join, I dissent for the additional reason that the effect of the majority's holding will be to insulate those convicted in federal courts from the removal provision of Pa. Const. Art. VI, § 7.[1]

If the removal provision applies only where the sentencing judge includes removal from office as part of the judgment of sentence, as held by the majority, its operation necessarily will be limited to those convicted in the Pennsylvania courts. To my knowledge, Congress has not authorized federal courts to include removal from state office pursuant to the Pennsylvania Constitution as part of the sentence for a federal conviction. Without such authority, I do not think the federal courts have the power to enforce Pa. Const. Art. VI, § 7 in the manner contemplated by the majority. I cannot believe that the framers of the Pennsyl-

---

1. The same result also would apply in the case of a Pennsylvania civil officer who is convicted of an infamous crime in the courts of another state.

vania Constitution intended that the broad removal provision of Pa. Const. Art. VI, § 7 would be so limited in its operation.

I agree with the majority that it is a self-executing provision. My difference with the majority is that I would construe it as being self-executing here.[2]

**2.** I also believe that due process requires that a person subject to the removal provision of Pa. Const. Art. VI, § 7 have the opportunity to be heard on the questions of whether he or she is a civil officer or has been convicted of an infamous crime. Where a convicted person does not resign from office, that opportunity to be heard could be in the defense of a quo warranto action filed by the attorney general or other appropriate plaintiff challenging the person's right to continue in office because of the removal provision. That would not be an option here, because Braig resigned from office. Nevertheless, I believe that due process is satisfied by affording Braig the right to be heard on the applicability of the removal provision in the context of this administrative proceeding, subject to appellate review in this court.