In Re: Stanley M. Greenberg, Judge, Court of Common Pleas of Philadelphia.

412

Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

ORDER PER CURIAM:

AND NOW, this 24th day of March, 1971, the recommendation of the Judicial Inquiry and Review Board in the above-entitled matter, by report filed December 31, 1970, is approved, and

IT IS ORDERED that Stanley M. GREENBERG, Judge of the Court of Common Pleas of the First Judicial District, City of Philadelphia, be and he is hereby suspended from his office, and prohibited from the exercise of any and all judicial functions, and from any and all judicial acts and judicial duties until the issue of his conviction (Criminal No. 23208 in the United States District Court for the Eastern District of Pennsylvania) shall become final.

OPINION IN SUPPORT OF ORDER, FILED BY MR. JUSTICE POMEROY:

The Court has this day entered an order suspending Judge Stanley M. GREENBERG from his office and from exercising judicial functions until the issue of his guilt or innocence is finally determined in the federal courts. This order was entered with reluctance, but in the firm belief that it is necessary in order to uphold respect for the rule of law and the administration of the judicial process in the courts of this Commonwealth.

The action now being taken, after mature deliberation, is pursuant to and in accord with the unanimous report and recommendation of the Judicial Inquiry and Review Board of the Commonwealth of Pennsylvania (herein "the Board"),[1] filed December 31, 1970, and

---

[1] The Judicial Inquiry and Review Board was created pursuant to Article V, Section 18 of the Constitution of Pennsylvania, proposed by the Constitutional Convention of 1967, and adopted by the electors on April 23, 1968. It is a board composed of nine members, as follows: two judges of the Superior Court and three judges of the courts of common pleas from different judicial districts, all of whom are selected by the Supreme Court; two non-judge members of the bar of the Supreme Court and two non-lawyer electors, all of whom are selected by the Governor. Under the procedure prescribed in said section, "any justice or judge may be suspended, removed from office or otherwise disciplined for violation of section seventeen of this article [article V], misconduct in office, neglect of duty, failure to perform his duties, or conduct which prejudices the

after consideration of the statement of objections[2] thereto filed on behalf of Judge GREENBERG.

The Board found that Judge GREENBERG was appointed to the Court of Common Pleas of the First Judicial District (City of Philadelphia) on August 6, 1965, and subsequently elected to a full term (10 years) which he is presently serving; that on March 20, 1968, Judge GREENBERG was indicted to Criminal No. 23208 in the District Court of the United States for the Eastern District of Pennsylvania for the crime of conspiracy and use of the United States mail to defraud in 21 counts; that on April 29, 1970, after trial by a jury, he was found guilty of the charges laid in Count 1 of the indictment, to wit, a conspiracy to use the United States mail to perpetrate a fraud; that the fraud concerned the use of the mail to kite bank checks during the

proper administration of justice or brings the judicial office into disrepute and may be retired for disability seriously interfering with the performance of his duties." Upon receiving a recommendation of the Board, the Supreme Court shall review the Board's proceedings, and "shall order suspension, removal, discipline or compulsory retirement, or wholly reject the recommendation, as it finds just and proper". Both suspension and removal entail a cessation of salary of the justice or judge from the date of the order. For a recent study of the removal, suspension and discipline of judges, with particular reference to the situation in Pennsylvania before the 1968 Constitutional Convention, including a discussion of the so-called "California Plan" on which the Judicial Inquiry and Review Board was patterned, see Reference Manual No. 5, "The Judiciary", of the Pennsylvania Constitutional Convention, Part V, 158 and 178 et seq.

2. The statement of objections challenged the finding of fact and conclusion of law that the indictment and conviction of Judge Greenberg has prejudiced the proper administration of justice and brought the judicial office into disrepute, and took issue with the Board's recommendation of suspension from office as distinguished from suspension from the exercise of judicial functions. No exception was taken to the competence or procedure of the Board, and no question has been raised as to the power of this Court to act as it sees fit upon the Board's recommendation.

period September, 1961 to July, 1965, prior to Judge GREENBERG'S appointment as a judge; that motions for a new trial and judgment of acquittal were denied on December 4, 1970;[3] and that the indictment and conviction of Judge GREENBERG "prejudiced the proper administration of justice and brought the judicial office into disrepute". The Board further found that since his conviction Judge GREENBERG had limited himself strictly to "matters of administration",[4] and that his record in connection with administrative work of the court had at all times been competent.

In its conclusions of law the Board stated that the conviction in the United States District Court of a judge of the court of common pleas of a conspirarcy to use the United States mail to defraud, "a felony-type offense",[5] "constitutes conduct which prejudices the proper administration of justice and brings the judicial office into disrepute." It also concluded that it is contrary to the intent and purpose of Article V, Sec. 18 of the Constitution of Pennsylvania that a judge of the court of common pleas "hold judicial office, administer the judicial power of the Commonwealth, exercise judicial functions and perform judicial acts while he himself stands convicted of unlawful and felonious acts". We accept both the findings and conclusions of the Board.

"The place of justice is a hallowed place; and therefore not only the bench but the foot-pace and precincts,

---

[3] On March 17, 1971, after Judge Greenberg's post-trial motions had been overruled, the following judgment and order of probation was entered: "Imposition of sentence is hereby suspended and defendant is placed on probation for a period of six months without supervision."

[4] We understand that this activity has been restricted to the civil side of the court.

[5] The crime involved is defined in 18 U.S.C. §1341 (1970) which provides for a maximum penalty of a $1000 fine or 5 years imprisonment or both.

and purprise thereof ought to be preserved without scandal and corruption . . ." So spoke Sir Francis Bacon in the 16th century.[6] For generations before and since it has been taught that a judge must possess the confidence of the community; that he must not only be independent and honest, but, equally important, believed by all men to be independent and honest. A cloud of witnesses testify that "justice must not only be done, it must be seen to be done." Without the appearance as well as the fact of justice, respect for the law vanishes in a democracy. As most recently observed by one of our colleagues on the federal bench, "Even casual followers of the news media during the past few months must be aware of the fact that the nation is experiencing a deep crisis of confidence in its judiciary. [There is a] widespread impression that the courts are falling far short of discharging their duty to provide both justice and the appearance of justice."[7] We have but lately had occasion to remark the erosion of confidence in our courts in a case involving the functioning of the very court of which Judge GREENBERG is a member.[8]

The Canons of Judicial Ethics of the American Bar Association have been adopted as applicable to judges of this Commonwealth.[9] These are in general terms (and are now undergoing restudy and proposed revision by the American Bar Association), but their application to the present case is clear enough. Canon 4 reads: "A judge's official conduct should be free from impropriety and the appearance of impropriety; he should

---

[6] Bacon, "Of Judicature", as quoted in Handbook for Judges 25, 27, Am. Jud. Soc. 1961.

[7] Edward Allen TAMM, Judge of the United States Court of Appeals for the District of Columbia, "Are Courts Going the Way of the Dinosaur?", 57 A.B.A. Journal 229 (March 1971).

[8] *Tate v. Carroll*, 442 Pa. 45, 274 A. 2d 193 (1971).

[9] Effective January 28, 1965. See 425 Pa. xxiii (1967).

avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach."

Our Constitution has provided since 1874 that "all civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed *on conviction* of misbehavior in office or *of any infamous crime . . .*" (Emphasis supplied.)[10] This Court held long ago that an infamous crime is one which rendered the convicted person incapable of being a witness or juror. "The offenses which disqualify a person to give evidence, when convicted of the same, are treason, felony, and every species of crimen falsi . . . which involve the charge of falsehood, and affect the public administration of justice." *Commonwealth v. Shaver,* 3 W. & S. 338, 342 (1842). Without suggesting that this definition is sufficiently inclusive for the modern era,[11] we have no hesitation in holding that the federal crime of using the mails to defraud is clearly within the ambit of the *Shaver* classification. If removal of a judge from office is within the contemplation of this section of the Constitution, it is, *a fortiori,* within the scope of Article V, Sec. 18. Moreover, the action here taken, because of the pendency of appeal, is not removal but the lesser penalty of suspension.

[10] Constitution, Article VI, Section 7. The Constitution of 1838 contained a similar provision. This provision has been held to be a self-executing mandate, not dependent on the senatorial address process prescribed by the Constitution. *Commonwealth v. Knox,* 172 Pa. Superior Ct. 510, 522-524, aff'd, 374 Pa. 343 (1953).

[11] See Note, "What is an infamous crime or one involving moral turpitude constituting disqualifications to hold public office?" 52 A.L.R. 2d 1314 (1957). See also the definition of "serious crime" in Rule XV(b) of the proposed new Discipline Rules submitted by a special committee on Disciplinary Procedures to the Board of Governance of the Pennsylvania Bar, as circulated by said Board on January 26, 1971.

It has been urged that the action of suspension from the judicial office as well as from the performance of judicial function is too harsh because (1) the conduct in question does not involve judicial behavior and, in fact, occurred before Judge GREENBERG became a judge, and (2) Judge GREENBERG is performing administrative work in the Philadelphia Court of Common Pleas with great competence and is expert as a conciliator and expediter in civil cases, exhibiting skills of which the court is in dire need. We can find no merit in these arguments.

In the first place, we do not sit in judgment of Judge GREENBERG nor mete out punishment to him; that is solely within the competence of the federal court in which he was tried and convicted. What we seek to do is to maintain the integrity of the office of judge to the end that that office, and through it the administration of justice, will deserve and receive the support not only of litigants and lawyers but of the public as well. It may be granted that the problem would be aggravated had the crime been committed while Judge GREENBERG was holding judicial office, but this does not alter the facts before us: the crime for which the judge stands convicted covered a period of almost four years and ended only within a month of the time he ascended to the bench; it was, moreover, a crime involving fraudulent use of the mails; and it carried the potential prison sentence and fine noted in footnote 5. It is no answer to say that Judge GREENBERG is not now presiding in a courtroom in the trial of cases; he is doing judicial work of equal importance, and his success therein is because, in addition to his other attributes, he occupies the status of judge. There is no such thing as non-judicial phases in the work of a judge who is functioning *qua* judge. For the purpose of upholding the dignity of the judicial office and the integrity of the judicial process, we cannot place judicial duties or activities

into compartments; they are of one pattern and one cloth.

This Court has adopted not only the Canons of Judicial Ethics, applicable to judges, but the Code of Professional Responsibility, applicable to lawyers.[12] Under DR 1-102, declaratory of the common law, it is stipulated that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation". This is not limited to conduct in the practice of law, but reaches to general activities. The reason for this is not punitive but because of our concept of the lawyer's responsibility in society.[13] If we hold the profession to a standard so high, can we be less exacting with respect to judicial conduct?

It has been well said that "To the people of his jurisdiction, the judge is the personal embodiment of our American ideal of justice. In his jurisdiction he is the court, one of the three equal branches of our system of government. . . . People generally, and lawyers as well, want to look up to their judges."[14] As Judge Medina puts it, "The judge's robe is the mark that he who wears it has a sacred duty to perform."[15]

In the second place, we cannot, in the context of the matter now before us, be influenced by the con-

---

[12] See 438 Pa. xxix (1970).

[13] Mr. Justice FRANKFURTER aptly described this responsibility: "It is a fair characterization of the lawyer's responsibility in our society that he stands 'as a shield', to quote DEVLIN, J., in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as 'moral character'." *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 247, 1 L. Ed. 2d 796, 806 (1957). (FRANKFURTER, J., concurring.)

[14] Arch M. Cantrall, "The Judge as a Leader; the Embodiment of the Ideal of Justice", 45 A.B.A. Journal 339 (1959).

[15] Harold R. Medina, Address to the Pennsylvania Bar Association, 36 Journ. Am. Jud. Soc. 6 (1952).

gested condition of the court dockets in Philadelphia. Granted the proficiency of Judge GREENBERG's performance in expediting, through conciliation and otherwise, the disposition. of the trial list in that jurisdiction, there cannot be one standard for judging the conduct of a judge in an overburdened metropolitan court and another standard for judgment in a less busy, uncongested court in a smaller community. The courts of Pennsylvania, under our present Constitution (Article V, Section 1), are all parts of one "unified judicial system". While it is regrettable that, as long as the instant order remains in effect, the valued services of Judge GREENBERG will not be available to the Philadelphia court, it would be infinitely more regrettable were we to erect or condone a double standard among Pennsylvania judges in the crucially important field of qualification to hold and exercise judicial office.

It is with the foregoing considerations in mind that we have felt constrained to enter the instant order.

Mr. Justice JONES, Mr. Justice EAGEN, and Mr. Justice O'BRIEN join in this opinion.

---

OPINION IN OPPOSITION TO ORDER, FILED BY MR. JUSTICE ROBERTS:

I am in full agreement with the general precepts enunciated by the majority concerning the high ethical standards to be followed by the judiciary and the legal profession. However, because of the present exceptional circumstances and the enormous backlog in the First Judicial District, I must dissent from the Court's blanket suspension of Judge Stanley M. GREENBERG, and would, in lieu thereof, limit and restrict his services "exclusively to administrative functions and voluntary settlement conferences."

I am convinced that on this record, this is the wise and desirable disposition of this matter. Further, such a modification of the recommendation of the Board of

Judicial Inquiry and Review represents fully the very strong and persuasive recommendation of President Judge D. Donald JAMIESON of the Philadelphia Court of Common Pleas, the late President Judge Vincent A. CARROLL of the same court and many other professional leaders of the Philadelphia Bar familiar with the extreme civil backlog. Those recommendations are that Judge GREENBERG be permitted to continue to devote his time solely to these non-judicial phases of assisting in trial list management and voluntary settlement conferences, *with the continued approval of the attorneys and, if necessary, the parties involved.*

I am fully persuaded that justice and wisdom indicate that we rely on these highly competent and totally responsible recommendations particularly since the conduct complained of involved no judicial misconduct and is alleged to have occurred more than seven years ago, prior to his ascending the bench, and also since the charges have not yet been finally adjudicated.

Mr. Chief Justice BELL and Mr. Justice BARBIERI join in this opinion.