590 A.2d 284

**In re Joseph P. BRAIG, Court of Common Pleas, Philadelphia, Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1990.

Decided April 29, 1991.

James E. Beasley, Barbara Axelrod, Philadelphia, for respondent.

Robert Keuch, Executive Director, Harrisburg, for J.I.R.B.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This matter comes before the Court on the Petition of the Judicial Inquiry and Review Board to Implement Automatic Forfeiture of Judicial Office. The Board filed its petition on September 8, 1989, requesting that the Court issue a Rule to Show Cause why former judge Joseph P. Braig should not be subject to the provisions of Article V, Section 18(*l*) of the Pennsylvania Constitution and be declared automatically removed from his judicial office as of June 29, 1989, and thereafter be ineligible for judicial office. We issued such a Rule on December 22, 1989, returnable on January 22, 1990, and the case came on for oral argument at the Philadelphia session of Court commencing October 22, 1990.

On June 29, 1989, Braig pleaded guilty[1] in the United States District Court for the Eastern District of Pennsylvania to three counts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2, for having submitted an inflated claim on his homeowner's insurance policy following damage to the family home. Such violations are punishable by imprisonment for up to five years and fines of up to $1,000.00. The court sentenced Braig to three years probation including 100 hours of community service per year, restitution of $5,500 plus interest, and payment of $3,000.00 in fines.

1. As part of the plea agreement, Braig agreed to resign from his position as a judge of the Court of Common Pleas for Philadelphia and never again seek elective office in the Commonwealth.

Upon imposition of this sentence for these criminal acts, the Board filed this matter seeking the Court's implementation of the sanction of forfeiture of office as provided in Article V, Section 18(*l*) of the Pennsylvania Constitution. According to that section,

> A justice, judge or justice of the peace convicted of misbehavior in office by a court, disbarred as a member of the bar of the Supreme Court or removed under this section 18 shall forfeit automatically his judicial office and thereafter be ineligible for judicial office.

Looking at this section as a whole, it contains three "tracks" that may lead to forfeiture of judicial office— conviction of misbehavior in office, disbarment[2], and removal following proceedings before the Judicial Inquiry and Review Board. In its Petition, the Board cited only the first of these, conviction for misbehavior in office, as the grounds for the relief requested. Our resolution of this case, however, requires that we distinguish between this condition precedent to forfeiture and the other condition specified, removal under Section 18. This latter form of removal, following formal charges, investigation by the Board, recommendation of discipline, and action by the Court, may be founded on a wide range of activity, described in subsection (d)—"violation of section 17 of [Article V], misconduct in office, neglect of duty, failure to perform duties, [and] conduct which prejudices the proper administration of justice or brings the judicial office into disrepute".[3] If the Constitution provides "conviction for misbehavior in office" as a *separate* basis for forfeiture, this must be something different from the forfeiture accompanying removal directed by the Court on the basis of the

---

2. Although this provision is of no relevance to the present matter, we note that membership in the bar is a necessary qualification for holding the office of judge. Thus, one who has been disbarred—after charges have been filed, an investigation has been conducted, and the respondent has had an opportunity to defend against the charges—*as a matter of record* no longer possesses the qualifications for office.

3. Significantly, however, removal is not the only discipline that may follow proceedings before the Board, and less severe discipline may be appropriate for conduct within this same range of activity.

record developed before the Judicial Inquiry and Review Board.

"Misbehavior in office" was a common law crime consisting of the failure to perform a positive ministerial duty of the office or the performance of a discretionary duty with an improper or corrupt motive. Our Constitution has long contained provisions specifying that civil officers "shall be removed on conviction of misbehavior in office or of any infamous crime." Constitution of 1838, Article VI, Section 9; Constitution of 1874, Article VI, Section 4 (renumbered Article VI, Section 7 on May 17, 1966). In the several cases where interpretation of these provisions came before the appellate courts, it was uniformly understood that the reference to "misbehavior in office" was to the criminal offense as defined at common law.

*Commonwealth v. Shaver*, 3 W. & S. 338 (1842), was a quo warranto action against a sheriff who continued to exercise his office although the governor had superseded his commission following the sheriff's conviction for bribing someone to vote for him in the election by which he took office. Our Court framed the issue as arising out of Article VI, Section 9, and examined whether Shaver had been convicted of misbehavior in office or of any infamous crime. The first of these we dismissed summarily: "As to misbehaviour in office, it is perfectly manifest that he has not even been charged with, much less convicted of it." *Id.* at 340.[4]

**4.** We also looked to the legal definition of "infamous crime"—one which upon conviction rendered a person incompetent to be a witness or juror—to determine whether the latter basis for removal had been satisfied. The disqualifying offenses at common law were "treason, felony, and every species of the *crimen falsi*—such as forgery, perjury, subornation of perjury, attaint of false verdict, and other offenses of like description, which involve the charge of *falsehood, and affect the public administration of justice.*" *Id.* at 342 (emphasis in original). Examining the common law cases, we determined that a conviction of bribery in general did not disqualify a person from giving evidence or serving as a juror. However, the crime was infamous if the purpose of the bribery was to obstruct and pervert the public administration of justice, such as where a person summoned as a witness was bribed to not appear before the tribunal and give evidence. We held that Shaver's crime, although illegal and corrupt and one of great public concern, was not infamous and ordered judgment in his favor. *But*

In *Commonwealth ex rel. v. Davis,* 299 Pa. 276, 149 A. 176 (1930), we dealt with the mechanism for implementing the removal from office called for in Article VI, Section 4. Joseph Cauffiel, the mayor of Johnstown had been indicted, tried, and convicted of, among other things, misbehavior in office. Cauffiel had accepted money in exchange for allowing the operator of a gambling house, who had financed Cauffiel's mayoral campaign, the "exclusive privilege" of continuing his illegal activity. As part of the sentence, the common pleas court had directed that Cauffiel "shall be and is hereby removed from the office of mayor." Superior Court had affirmed, and our Court had dismissed his application for writ of certiorari. Before beginning his incarceration, however, Cauffiel had directed the treasurer not to pay any endorsements that he, Cauffiel, had not signed. The attorney general initiated a mandamus action, in which Cauffiel was permitted to intervene, and Cauffiel asserted that the constitutional provision for removal from office was not self-executing, that it required legislation to carry it into effect. We rejected this argument and, holding that the removal had been constitutionally imposed, affirmed the grant of mandamus. Observing that the framers of the Article had to have been aware of the many statutes which, "after defining the crime, say that the defendant 'on conviction' shall be fined and/or imprisoned, the penalty being imposed by the court before whom the defendant was convicted," we concluded that it must have been expected "that the constitutional provision providing for a specified punishment 'on conviction' would be interpreted in exactly the same way." 299 Pa. at 280–281, 149 A. 176.

In several other cases, the elements of the common law crime of misbehavior in office were examined to determine

*see, In re Greenberg,* 442 Pa. 411, 280 A.2d 370 (1971), vacated on other grounds, 457 Pa. 33, 318 A.2d 740 (1974) (federal crime of using the mails to defraud is clearly within the ambit of the *Shaver* classification of infamous crimes). *See also, Petition of Hughes,* 516 Pa. 90, 532 A.2d 298 (1987) (federal conviction of city councilman for conspiracy to violate Hobbs Act, 18 U.S.C. § 1951(a), by receiving payments relating to performance of duties and powers of public office was "infamous crime" within ambit of *Shaver* ).

254

if that common law crime had been abrogated by the enactment of a statutory penalty for the same offense. In *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942), for example, three councilmen had been indicted for misfeasance, malfeasance, and nonfeasance in office for voting to appoint themselves to positions on a city municipal authority. We held that the indictment could not be sustained, since Section 1009 of the Third Class City Code of 1931, P.L. 932, provided the penalty of forfeiture of office for the conduct involved—voting on a measure in which they had an interest—and thus abrogated the common law offenses.

Based on our reading of all the cases, we must conclude that the language of Article V, Section 18(*l*), like the identical language of present Article VI, Section 7, refers to the offense of "misbehavior in office" as it was defined at common law. This conclusion is not without its difficulties, however. Since the enactment of the Crimes Code effective June 6, 1973, common law crimes have been abolished and "[n]o conduct constitutes a crime unless it is a crime under this title or another statute of this Commonwealth." 18 Pa.C.S. § 107(b). Thus no prosecution on a charge of "misbehavior in office" can now be undertaken. Rather than reach the difficult question whether the legislature could effectively nullify the constitutional provision by abolishing the crime referred to therein, we think it prudent to adopt a holding under which the constitutional provision may still be given effect. Therefore, we hold that the automatic forfeiture provision of Article V, Section 18(*l*) applies where a judge has been convicted of a crime that satisfies the elements of the common law offense of misbehavior in office.[5] In such cases it will have been established

5. In *Commonwealth v. Knox*, 172 Pa.Super. 510, 94 A.2d 128, aff'd 374 Pa. 343, 97 A.2d 782 (1953), a Philadelphia magistrate had been convicted on an indictment charging violation of the Magistrates' Court Act of June 15, 1937, P.L. 1743; malfeasance, misfeasance, and nonfeasance in office; and misconduct in office. He had been sentenced to pay a $500 fine, imprisonment of three months, and his office was declared forfeited pursuant to the Act. Citing *Commonwealth v. Peoples*, Superior Court found that the existence of a statutory penalty for violation of the Magistrates' Act prevented conviction

as a matter of record, and beyond a reasonable doubt, that the judge has engaged in conduct directly affecting the integrity of the office. In this light, as indicated above the conviction of a crime that satisfies the elements of what was formerly the common law offense of misbehavior in office may be seen as the "fast track" to forfeiture of office, intended to quickly rid the system of judicial officers who have been shown by proceedings of record to have corrupted the office they hold. The other two "tracks" involve separate proceedings, first before advisory boards and then before this Court, in which the seriousness of the misconduct and its effect on a judge's qualifications to serve may be weighed.

■ Proceeding from the premise that misbehavior in office is established by a breach of a statutorily imposed duty, the Board argues that Braig has committed such a breach. The duty, they argue, is set out in Article V, Section 17(b), which provides that "Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court." The Board concedes that not every violation of the law, however minor, should be considered a breach of this duty warranting forfeiture under Section 18(*l* ), even though the language of Section 17(b) contains no such limitation. The Board argues, however, that Braig's crime, a felony punishable by up to five years imprisonment and $1,000.00 fine, is serious enough under whatever test might be adopted.

for the common law offenses. In light of this, Knox argued that his removal from office violated Article VI, Section 4, since he had not been convicted of misbehavior in office or any infamous crime. Noting that misbehavior in office "is committed whenever a public officer fails to perform a positive statutory duty," Superior Court held that, "[i]t is not essential to a removal that the public official be validly convicted of the common law offenses of malfeasance or misconduct in office. A removal is justified where the officer has been convicted of the violation of a statute which commands the performance of a positive, ministerial duty of his office." 172 Pa.Super. at 523, 94 A.2d at 134.

Without deprecating the importance of Section 17(b), we do not agree that it constitutes the type of *positive* duty the breach of which constitutes misbehavior in office. As it is stated, it is a negative duty, a duty *not* to engage in certain conduct. By comparison, in all the cases where violation of a statutory duty was identified as the equivalent of misbehavior in office, the statute required that the officeholder perform a particular act or exercise a function of the office in a particular way.

We also observe that violation of Article V, Section 17 is specifically identified in Section 18(d) as one of the bases for proceedings before the Board and discipline perhaps less than removal. We noted at the outset, however, that the constitution sets out conviction of misbehavior in office as a basis for forfeiture separate from removal under Section 18. It would thus be unreasonable to find that violation of Section 17 constituted the breach of positive duty underlying the offense of "misbehavior in office".

The Board also notes that under the other two clauses of Section 18(*l*), i.e., following disbarment or removal after disciplinary proceedings, a judge may forfeit his or her office for conduct that may not even be criminal. The Board then argues that if "misbehavior in office" does not include serious crimes unrelated to the office, we would be left with the incongruous result that judicial office could be forfeited for non-criminal conduct but not for serious criminal conduct. The Board cites *In re Greenberg*, 442 Pa. 411, 280 A.2d 370 (1971), vacated on other grounds, 457 Pa. 33, 318 A.2d 740 (1974), where a judge convicted of the federal offense of using the mails to defraud was suspended. Far from supporting the Board's argument, however, *Greenberg*, demonstrates the flaw in it.

Judge Greenberg was convicted for his participation in a check-kiting scheme that took place over several years preceding his appointment and subsequent election to the common pleas bench. This Court suspended him from office during the pendency of his appeal, *following proceedings before the Judicial Inquiry and Review Board*. The

Board had unanimously recommended the suspension after concluding "that the conviction . . . of a judge of the court of common pleas of a conspiracy to use the United States Mail to defraud, 'a felony type offense', 'constitutes conduct which prejudices the proper administration of justice and brings the judicial office into disrepute.' " 442 Pa. at 415, 280 A.2d at 371 (footnote omitted).

We find it significant that the action taken in *Greenberg* followed proceedings before the Board, and thus constituted discipline under Article V, Section 18(d). As previously noted, removal from office is one of the possible outcomes of proceedings before the Board, which may be based on charges that a judge has violated Article V, Section 17, as well as charges of "misconduct in office, neglect of duty, failure to perform . . . duties, or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute." And forfeiture of office under Section 18(*l*) would follow upon such removal after Board proceedings. Thus it does not follow, as the Board argues, that serious criminal conduct unrelated to the office will necessarily escape the sanction of forfeiture. Such conduct need only be made the subject of Board proceedings, findings, and recommendations to this Court.

Applying the foregoing analysis, we must conclude that Braig's conviction does not constitute "misbehavior in office" such as to warrant automatic forfeiture under Article V, Section 18(*l*).[6] Accordingly, the Rule to Show Cause must be dismissed.

**6.** Justice Flaherty's zeal to protect the judicial system from any taint that might undermine the public confidence and respect is indeed laudable. As a matter of policy, the distinction he draws between a crime that is *malum in se* or *crimen falsi* and one that is *malum prohibitum* might well be an appropriate basis for determining whether judicial office should be forfeited. This Court, however, is not free to set that policy according to the sensibilities of its members. We have not been given a blank slate. The words of the Constitution cannot be ignored.

As demonstrated in the text of this Opinion, for over 150 years the phrase "misbehavior in office", as it appeared in the Constitution, was understood to mean a specifically defined offense. At the time present Article V became a part of the Constitution, "misbehavior in

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this case.

NIX, C.J., joins in this opinion and files a concurring opinion in which CAPPY, J., joins.

PAPADAKOS, J., files a concurring opinion.

FLAHERTY, J., files a dissenting opinion.

NIX, Chief Justice, concurring.

I agree that Judge Braig's plea of guilty to mail fraud does not constitute a conviction of misbehavior in office to trigger automatic forfeiture of office under Article V, § 18(*l*) of the Pennsylvania Constitution. I therefore join the majority opinion and write separately only to emphasize that, as the majority notes, Judge Braig's conduct would justify discipline under section 17. That section explicitly prohibits a judge from "engag[ing] in any activity prohibited by law," § 17(b), and is a basis for the recommendation of discipline under § 18(d). Accordingly, it would seem that the Board is duty-bound to proceed further in this matter under that section.

CAPPY, J., joins in this concurring opinion.

PAPADAKOS, Justice, concurring.

I fully concur in the result reached by the majority in this case that automatic forfeiture under Article V, Section 18(*l*)

office" was still an indictable offense at common law. Justice Flaherty would ignore all this and attribute a new, broader meaning in order to produce results more swiftly and more to his liking. Our decision cannot be viewed as demonstrating a lesser degree of vigilance as to the integrity of the judicial system. Misconduct, of whatever nature, is still subject to penalty. We do nothing more than recognize and uphold the purposeful distinctions drawn by the framers of the Constitution as to when it is appropriate to impose the extreme and irreversible penalty of automatic forfeiture and permanent bar from judicial office.

Justice Flaherty's analysis would also, it seems, eradicate the distinction explicitly drawn in Article VI, Section 7 between "misbehavior in office" and "any infamous crime." Although not in issue in this proceeding, we note that Article VI, Section 7 provides that a civil officer "shall be removed on conviction of misbehavior in office or any infamous crime," see text at p. 5.

of our Constitution does not apply here because Judge Braig was not tried and convicted of "misbehavior in office."

Unlike the majority, I have no hesitancy in concluding that the People, in adopting Article V, Section 18(*l*), preserved the common law crime of "misbehavior in office" and that it is still a viable, chargeable offense which could not be abrogated by the Legislature when it enacted the current Crimes Code.

I believe that Article V, Section 18(*l*) is applicable where a jurist is charged specifically with the crime of "misbehavior in office." As the majority notes, the nonfeasance in office. When a jurist is convicted of "misbehavior in office" the sentencing judge will impose the automatic forfeiture provision as a part of the sentence which can then be reviewed as any other judgment of sentence. I am concerned that the majority has chosen to avoid speaking clearly on what crime must be charged in such cases and, in so doing, has failed to give direction to the bench and bar in the manner that these very important cases are to be commenced, prosecuted and disposed.

In any event, now that this Court has clarified the procedures to be applied to questions of judicial discipline and automatic forfeitures, it is hoped that the Judicial Inquiry and Review Board will act expeditiously in resolving the status of the judges who do not fall within the automatic forfeiture provisions.

FLAHERTY, Justice, dissenting.

I dissent. Anyone holding judicial office who is convicted of a crime which is *malum in se* or *crimen falsi* as opposed to one which is merely *malum prohibitum* should be regarded as having been convicted of "misbehavior in office" for purposes of forfeiture of judicial office pursuant to Art. 5, § 18(*l*) of the Pennsylvania Constitution. Historical distinctions between these types of crimes underlie the differentiation between automatic forfeiture of judicial office under Art. 5, § 18(*l*), clause 1 (conviction of misbehav-

ior in office) and removal under Art. 5, § 18(*l*), clause 3 (removal following formal charges, investigation by the Judicial Inquiry and Review Board, and action by this Court).

Although the Crimes Code contains no crime denominated "misbehavior in office," the Constitution's reference to such a crime as a basis for forfeiture should be construed in accordance with the obvious purpose of the provision, to wit, to remove from judicial office anyone whose criminal record would serve to seriously undermine public confidence in and respect for the courts. The fact that a crime was unrelated to the official duties of a judge is not pivotal, for the Constitutional provision does not refer to "misbehavior in the performance of official duties." Rather, it merely refers to "misbehavior in office," which, in view of the purpose of the provision, should be construed to mean "misbehavior while in office." Allowing persons convicted of serious crimes which are *malum in se* or *crimen falsi* to continue in office to administer justice to others, and to serve as purported pillars of respect for the legal system, is nothing less than farcical.

I would hold, therefore, that Judge Braig's conviction of mail fraud provides a basis for automatic forfeiture of his judicial office.