## In re Holly Sanders Millhimes

*Walton V. Davis,* for Straban Township.
*Ralph D. Oyler,* for Holly Millhimes.

KUHN, *J.,* August 31, 1992—This matter comes before the court upon petition of Straban Township, a second-class township, pursuant to an action for declaratory judgment wherein it asks this court to determine whether Article 2, section 7 of the Pennsylvania Constitution prohibits Holly Sanders Millhimes from holding the office of tax collector in the township.

By way of background, Ms. Millhimes, formerly Holly Sanders, was the successful Republican candidate for the office of tax collector in the primary election. A question has been raised regarding her eligibility for office, because on June 25, 1984 she pleaded guilty to a violation of 35 P.S. §780-113(a)(3) in a case docketed at CC-121-84. More specifically she pleaded guilty to possession with intent to deliver marijuana. The offense is an ungraded felony which carried a maximum penalty of five years'

incarceration and $15,000 in fines. She was sentenced to 23 months' probation which included seven days of incarceration. She successfully completed that matter without further incident. There is no indication that Ms. Millhimes has any other criminal record. She is currently 32 years of age.

A hearing was held on August 27, 1993. Because the eve for submitting the names of all candidates for printing on the ballot for the general election approaches, prompt disposition is required. While reasonably prompt disposition is favored in all cases, I mention this specifically here because the opinion rendered herein deserves more studied legal scholarship. Nevertheless, based upon the authority available, this court opines that Ms. Millhimes is not constitutionally ineligible to serve as tax collector for Straban Township if elected to office by the voters of that municipality.

Article 1, section 7 of the Pennsylvania Constitution provides:

"No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crimes, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth."

There is no question that the office of tax collector is an office of trust.

The specific issue for resolution is whether a felony drug offense is an infamous crime. Unfortunately, "infamous crime" is not defined anywhere in the Pennsylvania

Constitution (see also Article 6, section 7, Removal of Civil Officers).[1] We must, therefore, examine available case law and other sources for assistance.

Our research reveals two general principles:

(1) There are two methods of determining whether a crime is infamous at common law. The first, and the more modern, concerns itself primarily with the punishment which may be imposed and, generally speaking, the line of demarcation occurs when the offense is punishable by incarceration in a state penitentiary. The second, and more ancient, approach concentrates upon the nature or character of the underlying conduct and its affect

---

1. We note that in several contexts the General Assembly has seen fit to define "infamous crime" as "any violation and conviction for an offense which would disqualify an individual from holding public office pursuant to Article II, section 6 of the Constitution of Pennsylvania, or any conviction for a violation of this section, 18 Pa.C.S. §4413 (relating to misapplication of entrusted property and property of government or financial institutions) or 18 Pa.C.S., Ch. 47 (relating to bribery and corrupt influence), 49 (relating to falsification and intimidation), 51 (relating to obstructing governmental operations) or 53 (relating to abuse of office) or any other violation of the laws of the Commonwealth for which an individual has been convicted within the preceding 10 years and which is classified as a felony, and any similar laws of any other state or the federal government." See 47 P.S. §2-210 (relating to employment under provisions of the Liquor Code); 53 P.S. §16216 (relating to employment under the Pennsylvania Convention Center Authority Act); 55 P.S. §697.15 (relating to employment under provisions of the Rail Freight Preservation and Improvement Act), and 55 P.S. §698.33 (relating to employment pursuant to provisions of the Port of Pittsburgh Commission Act). Although similar definitions in the constitution would be helpful, these legislative pronouncements are not dispositive of the issue before the court.

upon the future credibility of the culprit rather than the punishment. 52 A.L.R.2d 1314; 21 Am. Jur. §§24, 25. Pennsylvania appears to follow the latter approach. See *Petition of Hughes,* 516 Pa. 90, 101, 532 A.2d 298, 304 (1987) (Papadakos, *J.,* concurring opinion); *Commonwealth v. Zavada,* 16 D.&C. 551 (1935).

(2) As early as 1842, for constitutional purposes, an infamous crime was one which rendered the person incapable of being a witness and included treason, common-law felony, and every species of crimen falsi which involved falsehood and which affected the public administration of justice. *Commonwealth v. Shaver,* 3 Watts & Serg. 338 (1842); *In re S.M. Greenberg,* 442 Pa. 411, 280 A.2d 370 (1971); *Petition of Hughes,* 516 Pa. 89, 532 A.2d 298 (1987); *Braig v. State Employees Retirement Board,* 138 Pa. Commw. 124, 587 A.2d 371 (1991), *alloc. den.,* 607 A.2d 258 (1992); *Commonwealth v. Zavada, supra.*

Adopting these principles to the matter sub judice it follows that Ms. Millhimes' conviction would not constitute an infamous crime. First, her conduct was not the type of offense which renders a person incapable of being a witness, constitutes a common-law felony, or involves crimen falsi. Second, the offense is not one which suggests that Ms. Millhimes' credibility as a public office holder would be affected.

Our research has revealed no case on point or even remotely close to the conduct at issue. Viewed from a historical perspective, however, I have no reason to

conclude, upon my limited research, that possessing marijuana for the purpose of sale or delivery would be considered an infamous crime.[2]

Justices of our Supreme Court have hinted on at least two occasions that the constitutional concept of infamous crimes may be expanded. *In re Greenberg, supra,* 442 Pa. at 417, 280 A.2d at 372; *Petition of Hughes,* 516 Pa. at 100, 532 A.2d at 303 (Hutchinson, *J.,* concurring opinion). It is not, however, for the undersigned to take that expansive judicial step in this case.

The court recognizes that the purpose of the constitutional provisions relating to eligibility to maintain public office must not be taken lightly and is designed to require high moral qualities and integrity of those seeking public office. The words of the Illinois Supreme Court are illustrative:

"Our system of government depends in large part upon trust and confidence in public officials. When a public official is convicted of an infamous crime, there can be no doubt that public confidence in him and in his future performance in the unit of government in which he serves is seriously damaged, if not totally destroyed. To prevent such a breakdown in respect for the law and confidence in government, the ... constitution effectuates the strong public policy of this state that no public official who stands convicted of an infamous crime is eligible to hold

---

2. "It does not follow ... that every felony is necessarily a crime of infamy..." *State ex rel. Wier v. Peterson,* 369 A.2d 1076 (Del. Super. 1976).

public office." *People ex rel. Taborski v. Illinois Appellate Court, First District,* 278 N.E.2d 796, 798 (1972).

By the same token there is a strong public policy that the voters be allowed to elect their public officials. It is not for this court to substitute its judgment for the will of the citizenry unless the conviction is clearly a crime of infamy. Certainly drug offenses are of great public concern in our current climate and Ms. Millhimes' conviction may influence many voters. Nevertheless, I do not feel that intense public concern alone is the criteria by which infamous crimes are to be defined. Otherwise, the shifting winds of public opinion could become an undesirable constitutional measuring device. Instead, the undersigned has confidence in the interest, intelligence and common sense of the electorate of Straban Township to carefully study the qualities and circumstances of all its candidates and to then express its will in the voting booth.

Accordingly, the attached order is entered.

## ORDER OF COURT

And now, August 31, 1992, after hearing and due consideration of the declaratory action filed by the Board of Supervisors of Straban Township, Adams County, Pa., it is hereby determined that Article 2, section 7 of the Pennsylvania Constitution does not preclude Holly Sanders Millhimes from being a candidate for or from holding the office of tax collector for Straban Township.