On May 18, 1993, the electorate of this Commonwealth amended Article V, Section 18 of the Pennsylvania Constitution, thereby designing a new scheme for judicial discipline. At the time of the Amendment, there did not exist in Pennsylvania the crime of "misbehavior in office." Consequently, I do not believe that District Justice Gentile must automatically forfeit his office as requested by the Judicial Conduct Board.
The prior version of Article V, Section 18 was adopted in 1968. At that time, this Commonwealth recognized the common-law crime of "misbehavior in office." See, e.g., In re Braig, 527 Pa. 248, 590 A.2d 284 (1991);Commonwealth v. Peoples, 345 Pa. 576, 28 A.2d 792 (1942). Accordingly, the constitutional language could be interpreted literally, and a judicial officer charged, tried and convicted of the common-law offense would be subject to automatic forfeiture of office based on that conviction.
In 1972, however, the General Assembly adopted the Crimes Code,[1]
which repealed all common-law crimes and provided that "[n]o conduct constitutes a crime unless it is a crime under this title or another statute of this Commonwealth." 18 Pa.C.S. Section 107(b). In Braig, a plurality of the Supreme Court avoided the "difficult question" of whether the legislature "could effectively nullify the constitutional provision by abolishing the crime referred to therein. Id. at 254,590 A.2d at 287.[2] The Court avoided the question by holding that, for the purpose of the then-existing Article V, Section 18(1) "automatic forfeiture" provision, the Supreme Court would compare, based on the record before it, the elements of the statutory criminal conviction to the elements of the common-law crime of "misbehavior in office" in order to determine whether automatic forfeiture was required. The Braig
plurality concluded that the approach was "prudent" in order to give effect to the constitutional provision. Id. at 254,590 A.2d at 287-88.[3]
A different issue is before this Court than was presented to the Supreme Court in Braig. In light of the 1993 constitutional amendment, we are faced with the question of whether a constitutional provision should be construed as reflecting the state of the law at the time of its adoption. I believe that it must. The General Assembly, when it adopted the Joint Resolutions proposing the 1993 amendment to Article V[4], must be presumed to have known that "misbehavior in office" no longer existed as a cognizable criminal offense in this Commonwealth. A court is to interpret constitutional language in its popular, ordinary, and natural meaning, taking into consideration the circumstances surrounding its formation and the likely construction placed upon it by the people who voted for it. Lyles v. City of Philadelphia, 88 Pa. Commw. 509,490 A.2d 936 (1985), aff'd, 512 Pa. 322, 516 A.2d 701 (1986). I can not conclude that the electorate in 1993 attached to the phrase "misbehavior in office" the technical meaning of a common-law crime which had been abolished more than two decades earlier.
If the phrase "misbehavior in office" does not refer to the former common-law crime, we must next consider whether it can be given any effect absent further action by the legislature. The noted Pennsylvania constitutional commentator, Robert E. Woodside, states that a constitutional provision is self-executing when it can be given effect without the aid of legislation and when the language of the provision does not indicate an intent to require legislation. Woodside,Pennsylvania Constitutional Law at 71. The automatic forfeiture provision for conviction of misbehavior in office does not set forth the elements of the offense, nor does it provide for the procedure, jurisdiction or venue for prosecution. A criminal provision which fails to give to a person of ordinary intelligence fair notice that his contemplated conduct is forbidden would violate the14th Amendment to the United States Constitution. Commonwealth v. Stein, 519 Pa. 137, 546 A.2d 36 (1988),cert. denied sub. nom. Pennsylvania v. Stein, 490 U.S. 1046 (1989). Because the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, 1 Pa.C.S. Section 1922, I conclude that automatic forfeiture for the reason of conviction of the crime of misbehavior in office is not self-executing absent legislation defining the crime of "misbehavior in office."
Even if the analysis of Braig and its progeny was applied, the petition must still be dismissed. In Braig, the Supreme Court concluded that the underlying conviction for federal mail fraud did not satisfy the elements of the common-law crime of "misbehavior in office." A conviction of two counts of attempted federal income tax evasion was similarly found not to constitute misbehavior in office. In re Dalessandro, 528 Pa. 240,596 A.2d 798 (1991). In fact, the sole reported case finding a conviction of "misbehavior in office" involved a federal conviction on one count of accepting money from an attorney in violation of the Hobbs Act. In reCain, 527 Pa. 260, 590 A.2d 291 (1991). Cain did not dispute the characterization of his conviction as "misbehavior in office." Accordingly, the question of whether sufficient evidence was of record to support such a finding was not at issue.
The question of the amount of evidence needed was, however, partially answered in In re Scott, 528 Pa. 206, 596 A.2d 150 (1991. The petition filed in Scott contained only a certified copy of the criminal information setting forth the charges and certified copies of the sentencing orders. The underlying criminal conviction in Scott was a violation of 18 Pa.C.S. Section 5101, the same offense of which Gentile was convicted. Based on the "sparse record" before it, the Supreme Court concluded that it could not properly determine whether Scott's conviction constituted "misbehavior in office." A review of the evidence before this Court reveals it to be equally sparse.
In the present case, the Board's petition contains a verdict slip from the Court of Common Pleas of Chester County showing one conviction of "obstruction of administration of law or other governmental function," and noting parenthetically "[Kramer citation/Chief Thomas, Officer Moore]." Petition to Implement Automatic Forfeiture, Exhibit A. Under this same parenthetical, however, the jury slip notes an acquittal on a charge of Official Oppression. The Board's petition also contains a sentencing sheet (Exhibit C), copies of the opinion of the trial court denying Gentile's post-verdict motions (Exhibit B), and a copy of an opinion and judgment by the Superior Court affirming Gentile's conviction (Exhibit D).
Paragraph 6 of the Board's petition contains the crucial allegations of fact in this matter. This paragraph reads in full as follows:
 6. In Count 4 [of the criminal information], the Commonwealth alleged that the Respondent had ex parte
contacts with and made repeated requests of the chief of a local police department in an effort to have the chief "fix" a speeding ticket by withdrawing the citation and substitute for it, a citation charging a violation of Section 3111 of the Vehicle Code which is a 0 points offense. When the chief took no action, the district justice threatened that he would call other speeding violators for hearings and find them not guilty. As a result of this threat, and Respondent's other actions, the chief withdrew the speeding citation that had been filed and filed a citation charging a violation of Section 3111 of the Vehicle Code. This speeding citation was issued by the Parkesburg, Chester County Police Department and the adjudication of this citation was within the jurisdiction of the Respondent.
If these allegations were uncontested, they may well be sufficient to establish the performance of a discretionary duty with a corrupt or improper motive, one of the prongs of the common-law crime. Gentile's Answer to the Petition, however, contains the following denial to paragraph 6:
 6. Denied Respondent was never charged with trying to "fix" a speeding ticket. He was alleged to have requested a change in the charged violation, and was alleged to have forced the Chief to change the violation. He never threatened anyone, and there was no evidence admitted at trial to support any contention of force or threat. The Parkesburg Borough Police Chief admitted at trial that the suggestion that the respondent would find defendants not guilty occurred with regard to a class of cases where uncertified officers offered technical VASCAR evidence; respondent informed the Chief, prospectively, that he would not receive the officer's testimony into evidence until they were certified in the use of VASCAR equipment. In fact, the Chief volunteered to change the citation after he started a heated, unrelated argument with the District Justice.
In his Memorandum of Law, Gentile argues, and I agree, that the factual record before this Court is insufficient to implement automatic forfeiture of office pursuant to Article V, Section 18(d)(3). While the Board filed with this Court the opinions of both the trial court and the Superior Court, both of which summarize and discuss the testimony presented at trial, neither of these opinions either finds certain factsto be true or concludes, as a matter of law, that Gentile's convictionsatisfies the elements of the common-law crime of "misbehavior inoffice."[5]
 Rather, as illustrated by the Board's allegations and Gentile'sdenial, the crucial facts which must be found in order to establish"misbehavior in office" are contested. Without findings by the trialcourt or an evidentlary hearing before this Court, the record currentlybefore this Court is insufficient to implement automatic forfeiture ofoffice based on a conviction of "misbehavior in office."
 McGINLEY and MAGARO, JJ., join this Opinion in Support of Dismissal of Petition for Automatic Forfeiture.
DEPAUL, J., concurs in the result.
[1] 18 Pa.C.S. Sections 1-9183, effective, June 6, 1973, as amended.
[2] Justice Papadakos concurred in the result in Braig, but would have reached and decided the "difficult question" by concluding that the adoption of Article V, Section 18(l) in 1968 preserved the common-law crime of "misbehavior in office," which could not have been abrogated by the legislature when it adopted the Crimes Code. Id. at 259,590 A.2d at 290 (Papadakos, J., concurring).
[3] This solution was workable under the prior constitutional provision because the Supreme Court possessed exclusive jurisdiction over cases involving judicial discipline. Accordingly, it made no practical difference whether the Judicial Inquiry and Review Board presented a case as a "petition for automatic forfeiture" or as a formal recommendation based on investigation and hearing, as the Supreme Court retained the power to accept, reject or modify any recommendations, and, in at least one case, rejected automatic forfeiture while ordering removal on the theory that the conduct violated ethical standards. In re Scott,528 Pa. 206. 596 A.2d 150 (1991).
[4] Pursuant to Article XI, Section 1 of the Pennsylvania Constitution, proposed constitutional amendments must be agreed to by both houses in two successive General Assemblies prior to being placed on the ballot for approval by the electorate. The 1993 amendment approved by Joint Resolution No. 1, 1992, P.L. 1823, S.B. No. 1000 and Joint Resolution No. 1, 1993, P.L. 577, H.B. No. 1.
[5] Both opinions discuss trial testimony in the context of Gentile's challenge that insufficient evidence was presented from which the jury could convict him of a violation of 18 Pa.C. S. Section 5101. As noted by Judge Saylor of the Superior Court:
In evaluating Appellant's claim regarding the sufficiency of the evidence, we must decide:
 [w]hether, viewing the evidence in the light, most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. . . .
 Commonwealth v. Gentile. 433 Pa. Super. 381, ___, 640 A.2d 1309, 1312
(1994) (quoting Commonwealth v. Harper, 485 Pa. 572, 576. 403 A.2d 536, 538
(1979)).
The crime to which Judge Saylor was referring was, of course, obstruction of administration of law or other governmental function. We cannot infer from the Superior Court's conclusion that sufficient evidence had been presented to establish the quite distinct elements of the common-law crime of "misbehavior in office."