809 A.2d 348

**COMMONWEALTH of Pennsylvania, ex rel. Mark C. BALDWIN, District Attorney, County of Berks, Appellee**

v.

**Craig Wes FISHER, Appellant.**

Supreme Court of Pennsylvania.

Oct. 25, 2002.

## ORDER

PER CURIAM:

**AND NOW,** this 25nd day of October, 2002, the Order of the Court of Common Pleas of Berks County is hereby affirmed. *See Commonwealth ex rel. Baldwin v. Richard,* 561 Pa. 489, 751 A.2d 647 (2000).

Justice SAYLOR files a dissenting statement.

Justice SAYLOR dissenting.

Appellant is the owner of a residential rental property which he leased to Terry Guldin and Janelle Houck ("Lessees"). On February 27, 2000, without paying their February rent, Lessees informed Appellant that they were moving from the residence in breach of their lease, which expired in April of 2000. The following day, Appellant entered the premises and transferred several remaining items of personal property, including a television and a VCR, into a barn for temporary storage while the facility was cleaned and prepared for future tenants.[1] Appellant subsequently instituted a civil action against Lessees to recover for unpaid rent and utility bills, and repairs to the residence, and was ultimately awarded $2,815 plus pre-judgment interest.

In March of 2000, Appellant was charged with theft by unlawful taking, *see* 18 Pa.C.S. § 3921(a), stemming from his having moved Lessees' personal items from the rental property into storage. Appellant pled no contest to the charge and, based upon such plea, was sentenced to twenty-three months of probation and ordered to pay $3,910 in restitution.[2] Thereafter, in November of 2000, the District Attorney filed a *quo warranto* action in the Court of Common Pleas of Berks County.[3] The action sought a declaration that Appellant had been convicted of an "infamous crime," and requested his removal from his position as Jury Commissioner on the basis that he was ineligible to hold office under Article II, Section 7 of the Pennsylvania Constitution. The parties filed cross-motions for summary judgment and the trial court heard oral

1. In his Answer and New Matter, and in deposition testimony, Appellant maintained that, on February 27, 2000, he had seen a moving van at the property, and that when he entered the premises the following day, it appeared that Lessees had moved out but had left behind the personal items that he eventually transferred into storage.

2. The trial court observed that, whether Appellant intended to convert the property to his own use, or whether his actions were instead a "misguided attempt at self help," is rendered irrelevant by the conviction.

3. *Quo warranto* is the proper means by which to test title or right to public office. *See In re Bd. of Sch. Directors of Carroll Township*, 407 Pa. 156, 157–58, 180 A.2d 16, 17 (1962).

argument. The court ultimately entered summary judgment in the Commonwealth's favor, removing Appellant from public office and barring him from holding any future office. This timely appeal followed. Because I do not believe that theft by unlawful taking necessarily constitutes an "infamous crime" under Article II, Section 7, I would reverse.

Article II, Section 7 of the Pennsylvania Constitution states:
No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth.

PA. CONST. art. II, § 7. Since Appellant was not convicted of embezzlement, bribery, or perjury, the issue is whether he committed an "infamous crime."

In *Commonwealth v. Shaver,* 3 Watts & Serg. 338, 1842 WL 4918 (Pa.1842), this Court delineated the category of infamous offenses as:
treason, felony, and every species of the *crimen falsi*—such as forgery, subornation of perjury, attaint of false verdict, and other offences of the like description, which involve the charge of falsehood and affect the public administration of justice.

*Id.,* 1842 WL 4918 at *4.

Although this passage in its original context pertained to offenses that would disqualify a person from giving testimony in court—and appeared within a broader discussion of the legal concept of infamy as connoting crimes that disabled a person from serving as a juror or a witness—it was subsequently adopted as a description of infamous offenses for purposes of Article II, Section 7. *See, e.g., Petition of Hughes,* 516 Pa. 90, 97–98, 532 A.2d 298, 302 (1987). More recently, in *Baldwin v. Richard,* 561 Pa. 489, 751 A.2d 647 (2000), this Court reiterated the above classification, and continued:
As we see no reason to depart from such an established principle, we reaffirm that a crime is infamous for purposes of Article II, Section 7, if its underlying facts establish a felony, a *crimen falsi* offense, or a like offense involving the

charge of falsehood that affects the public administration of justice.

\* \* \*

Our Court has consistently applied this definition without employing a mechanical rule whereby we deem a crime infamous solely on the grounds that it disqualifies one from serving as a juror. Instead we have analyzed the facts and circumstances surrounding the crime and determined whether the offense at issue was akin to those set forth in *Shaver.*

*Id.* at 497–98, 751 A.2d at 652 (footnote omitted).[4]

Presently, the trial court read both *Shaver* and *Richard* to dictate that all offenses deemed *crimen falsi* are assumed to adversely affect the administration of justice when committed by an individual who holds public office. The court reasoned that commission of such crimes "undermines the integrity of the office, thereby affecting the public administration of justice." Trial Court op., *slip op.* at 6. The trial court thus concluded that any *crimen falsi* offense is infamous when committed by an officeholder. This incorrectly states the rule, however, as the *Shaver* classification requires that, to be infamous, the underlying *crimen falsi* offense itself must affect the public administration of justice. *See, e.g., In re Braig,* 527 Pa. 248, 252 n. 4, 590 A.2d 284, 286 n. 4 (1991) (observing that, under the *Shaver* rule, bribery is only infamous if its purpose is to obstruct justice).[5] Such distinction might remain of little relevance were it not for an expansion, in recent years, of the types of offenses considered *crimen falsi.*

4. The trial court in *Richard* had defined constitutionally infamous crimes as those offenses which would specifically render a person incapable of serving as a juror. *See Richard,* 561 Pa. at 494, 751 A.2d at 650.

5. To the extent that the first paragraph of *Richard* quoted above can be read to expand the list of constitutionally infamous crimes to include all *crimen falsi* offenses whether or not they tend to have an effect on the public administration of justice, the second paragraph clarifies that no such broadening of the scope of constitutional infamy was intended.

At common law, *crimen falsi* referred to any crime rendering the perpetrator incompetent as a witness, such as forgery, perjury, subornation of perjury, "and other crimes affecting the administration of justice." BLACK'S LAW DICTIONARY 372 (6th ed.1990). One aspect of such offenses appears to be the perpetrator's lack of regard for the truth even to the degree that he is willing to undermine the public administration of justice. *See Commonwealth v. Jones*, 334 Pa. 321, 323, 5 A.2d 804, 805 (1939) (explaining that *crimen falsi* necessarily entails an element of falsehood, and includes "everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud" (internal quotation omitted)). It logically follows that offenses traditionally deemed *crimen falsi* entail, at a minimum, an intent to deceive. *See Government of Virgin Islands v. Toto*, 529 F.2d 278, 281 (3d Cir.1976) (explaining that *"[c]rimen falsi* describes crimes involving, or at least relating to, communicative, often verbal, dishonesty"). This aspect of traditional *crimen falsi* would appear consistent with a primary purpose of the classification as a test of the competency of a prospective witness, where the court is concerned that the testimony be potentially worthy of belief. *See Rosen v. United States*, 245 U.S. 467, 471, 38 S.Ct. 148, 150, 62 L.Ed. 406 (1918). It is evident, moreover, from a close review of the *Shaver* opinion itself, that this Court considered the phrase *"crimen falsi"* virtually coterminous with the set of offenses "which involve the charge of falsehood and affect the public administration of justice." *See Petition of Hughes*, 516 Pa. 90, 97, 532 A.2d 298, 302 (1987) (clarifying that a city councilman's selling of his vote was constitutionally "infamous" because it involved a falsehood which affected the public administration of justice); *cf. Braig v. State Employees' Retirement Bd.*, 138 Pa. Cmwlth. 124, 135, 587 A.2d 371, 376 (1991) (deeming mail fraud constitutionally infamous because the underlying conduct involved falsehood and deception (citing *In re Greenberg*, 442 Pa. 411, 417, 280 A.2d 370, 372 (1971))), *appeal denied*, 530 Pa. 649, 607 A.2d 258 (1992). *See generally State v. Surles*, 230 N.C. 272, 52 S.E.2d 880, 888 (1949) (Ervin, J., dissenting)(observing that common law *crimen falsi* offenses are

those "involving corrupt deceit, or falsehood by which the public administration of justice may be impeded, such as perjury, subornation of perjury, forgery, bribery of witnesses, conspiracy in procuring non-attendance of witnesses, barratry, counterfeiting, cheating by false weights or measures, and conspiring to accuse an innocent person of a crime").

As the common law rules rendering individuals convicted of certain crimes incompetent to serve as witnesses were removed by legislation, *see generally Richard*, 561 Pa. at 497–98 n. 12, 751 A.2d at 652 n. 12, it became necessary as an evidentiary concern to broaden the scope of prior offenses available to impeach a witness's credibility under the rubric of *"crimen falsi."* For example, in recent years, there has been a tendency to view the dishonest intent inherent in theft generally as implicating this modern *crimen falsi* classification, *see, e.g., Commonwealth v. Paddy*, 569 Pa. 47, 80, 800 A.2d 294, 314 (2002), with the result that theft by unlawful taking is now an appropriate basis for impeachment of a witness, *see Commonwealth v. Baxter*, 537 Pa. 41, 46, 640 A.2d 1271, 1273 (1994), although it does not necessarily involve any deception. *Compare* 18 Pa.C.S. § 3921 (defining theft by unlawful taking), *with* 18 Pa.C.S. § 3922 (defining theft by deception).[6] It is less clear, however, that such liberalization in the rules of evidence can properly form the basis for an expansion of the list of offenses deemed "infamous" for purposes of Article II, Section 7. Indeed, "[i]t is unlikely that the framers of the Constitution intended 'infamous crime,' a term of constitutional import, to be subject to such varying interpretations." *Richard*, 561 Pa. at 498 n. 12, 751 A.2d at 652 n. 12. More to the point, because theft by unlawful taking in and of itself implies neither an intent to deceive nor an effect upon the public administration of justice, it should not, in my view, automatically be included within the traditional category of crimes considered constitutionally infamous, notwithstanding its present status as *crimen falsi* for impeachment purposes.

---

**6.** *See generally* Stuart P. Green, *Deceit and the Classification of Crimes: Federal Rule of Evidence 609(a)(2) and the Origins of Crimen Falsi,* 90 J.Crim L. & Criminology 1087, 1119 (2000)(criticizing the inclusion of theft within the class of crimes deemed *crimen falsi*).

While one may properly consider all forms of theft condemnable, that alone is insufficient to invoke the constitutional prohibition here at issue. *See Richard,* 751 A.2d at 653 ("Although Appellant's offenses are reprehensible, they are not of such nature as to be a constitutional impediment to his holding office.").[7] Under *Richard,* this Court is not at liberty to expand the definition of infamy for purposes of Article II, Section 7 beyond the meaning intended by the framers. *See id.* at 498 n. 12, 751 A.2d at 652 n. 12; *see also Commonwealth v. Wise,* 216 Pa. 152, 156, 65 A. 535, 537 (1907) ("In construing a Constitution, the object is to give effect to the intent of the people adopting it."); *Commonwealth ex rel. Paulinski v. Isaac,* 483 Pa. 467, 477, 397 A.2d 760, 766 (1979). Accordingly, as the offense of which Appellant was convicted does not involve a charge of falsehood affecting the administration of justice, it should only fall within the traditional definition of an "infamous crime" under either *Shaver* or *Richard* if it was graded as a felony.

The record contains conflicting indications concerning whether Appellant was convicted of a felony or a misdemeanor. Although the trial court's opinion suggests that he was convicted of misdemeanor level theft,[8] *see* Trial Court op., *slip op.* at 1–2, the criminal information reflects a grading of third-degree felony, and the plea colloquy sheet that Appellant signed includes an acknowledgment of a possible sentence of up to seven years in prison, which is consistent with felony gradation. *See* 18 Pa.C.S. § 106(b). Since, as noted, I believe that the grading of Appellant's offense as misdemeanor or

7. Notably, as well, the facts underlying the present matter are less severe than those in *Richard.* In that case a borough councilman had held his former girlfriend at gunpoint in a car for three hours, and was subsequently convicted of unlawful restraint, terroristic threats, reckless endangerment, firearms violations, and other offenses. *See Richard,* 561 Pa. at 493, 751 A.2d at 649. Thus the appellant had deprived his victim of her liberty and placed her at serious risk of physical harm. We nonetheless determined that he was not constitutionally barred from holding public office. *See id.* at 500, 751 A.2d at 653. The conduct of the present Appellant, by contrast, affected the proper disposition of several items of personal property.

8. In their briefs on appeal, the parties also agree that Appellant was only convicted of a misdemeanor.

felony is presently dispositive of the question of constitutional infamy, I would remand the case for a determination, in the first instance, of whether or not Appellant was convicted of a felony offense, and if so, the effect of the District Attorney's failure to pursue that as a ground for *quo warranto* relief.